## SUCCESSION OF JOHNSTON.

The curator of a succession may sue the surety of a former curator for any amount due to the succession by his principal; and where the surety is dead, the proceeding may be by opposition to the homologation of an account presented by his administrator. C. P. 111, C. C. 1119.

SUCCESSION OF   Where an administrator claims to be allowed commissions upon debts due the estate from
JOHNSTON.           which nothing has been collected, it is for him to show that the debts were such as to
                    entitle him to a commission upon their amount, and that he made unavailing efforts to collect
                    them.

                Where in an action by a curator against the surety of a former curator for an amount due to the
                    succession by his principal, the plaintiff has proved the obligation of the principal and the
                    amount of funds of the succession received by him, the burden of showing that the funds
                    have been legally distributed devolves upon the surety.

                It is no defence to an action against the surety of a curator sued for funds of the estate received
                    by his principal and not accounted for, that the debts due by the succession have been extin-
                    guished by prescription. Such extinction enures to the benefit of the succession, and not
                    to that of the curator or his surety.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.
*Bodin*, for the appellant. *Hoffman*, contrâ.

The judgment of the court was pronounced by

KING, J. *H. Swazey* died in this city, leaving a vacant succession, of which
*A. G. Morris* was appointed the curator, and he gave bond as such, with *E. C.
Johnston* as his surety. In 1838 the curator filed a provisional tableau of distri-
bution of the succession under his charge, in which he debits himself with
$6126 26 as having been received, and sets forth a list of the privileged debts.
He subsequently left the State, died insolvent in the State of Alabama, and *Fink*
was appointed his successor in the curatorship. Since the date of the bond,
*Johnston*, the surety, has also died insolvent, and his administrator has filed a
tableau of distribution of the funds of his succession, the homologation of which
is opposed by *Fink*, in his capacity of curator, on the ground that the succession
of *Swazey* has not been placed upon it as a creditor for the amount which *Mor-
ris* had received as curator. Four other grounds of opposition were filed by
*Fink*, the first of which was admitted in the court below to have been well
taken, and the amendment of the tableau accordingly made, and the fourth was
abandoned. The two remaining grounds of opposition are, that the adminis-
trator has not credited, as a part of the assets, the notes received for property in
the *faubourg* Saulet, and that he has credited himself with too large an amount
as commissions. The court below ordered the tableau to be amended: 1st, by
placing the succession of *Swazey* as a creditor upon it for $6,128; 2d, by adding
to the account of assets $2,350 75, the amount of several notes; and 3d, by re-
ducing the commissions of the administrator. From this judgment the adminis-
trator of *Johnston* has appealed.

Before proceeding to inquire into the merits of the several grounds of oppo-
sition, it becomes necessary to dispose of the objection urged by *Johnston's*
administrator, that the curator, *Fink*, cannot maintain his opposition, founded as
it is upon the bond of his predecessor *Morris*, and that none but the creditors, or
heirs, of *Swazey* can proceed against the surety upon the bond.

The bond given by a curator is to secure the faithful administration of the
estate committed to his charge. The obligation of the surety is that the prin-
cipal shall faithfully administer, and the parties are bound *in solido*. Civil Code,
art. 1119. 19 La. 468.

The duties of a curator are distinctly defined by law. He is required, among
other things, to ascertain the assets of the succession, to reduce them to pos-
session, and to cause them to be distributed among the creditors and other per-
sons interested according to their respective rights. Upon his failure to dis-
charge these obligations, those interested in the administration may require of

him to account, and invoke the aid of courts of justice to coerce the performance of the duties of his trust. *Swazey's* succession was unquestionably the creditor of *Morris* for the amount of its funds which had been collected and not accounted for by the latter, and was also the creditor of *Johnston*, the surety. The first duty of *Fink*, upon being appointed curator, was to ascertain what were the assets of the succession which he was about to administer, and to collect them for legal distribution. When he discovered that they were still in the hands of his predecessor, who had died insolvent, he properly proceeded against the surety upon the bond. Code of Pract. art. 111.

If the ground assumed by the administrator of *Johnston* be correct, it would be wholly unnecessary to appoint a successor to a curator who had died, resigned, or been removed, for after his appointment he would be powerless to act. He could require from his predecessor no account of his administration, collect no funds for distribution, and each creditor would be left to pursue his separate remedy. To what end then would a successor be appointed, and for what purpose does the law require such appointments to be made. Code of Pract., art. 111. The probate judge correctly overruled the objection.

The court below ordered the tableau of assets to be increased, by adding to it the sum of several notes, amounting in the aggregate to $2,350 75, of which a mere memorandum had been made at the foot of the account. We find, upon examination, that the sum ordered to be carried to the credit side of the tableau was composed of three notes, arising from sale of property in *faubourg* Saulet, for $737 50 each, and of three other notes amounting together to $143 25, resulting from sales in *faubourg* Delord, making collectively the sum of $2,350 75, showing no error of calculation. The court correctly ordered the tableau to be thus amended. To this it is objected that the court erred : first, in its calculation, the notes being for only $2,212 50 ; and, secondly, in ordering their amount to be credited as cash.

It was not necessary that the expense of a second tableau should be incurred for the purpose of accounting for the notes and distributing their proceeds. The order of the court is not that the amount of the notes be placed upon the tableau as cash in the hands of the administrator, but merely that the assets be credited with that amount. The administrator may still exonerate himself from his liability with regard to these notes, by producing them before the Probate Court, showing that they have not been collected, and that the failure to collect has not been owing to *laches* on his part.

The next alleged error in the judgment appealed from is, that the court deducted from the inventory the amount of bad debts, and allowed the administrator commissions upon the remainder ; and further, that the judge allowed as an off-set against the commissions the amount of a receipt given by the administrator to *Johnston*, which it is contended is not an evidence of indebtedness, but merely a voucher for a note and draft returned. It is urged that in matters of succession the designation of debts as *bad* has a legal meaning ; that these are described to be debts prescribed against, or due by bankrupts who have surrendered no property to be divided among their creditors (Civil Code, art. 1041) ; and that it has not been shown, that the claims rejected by the probate judge in computing the commissions fall within this description.

It was the duty of the administrator, if he claimed commissions upon unproductive demands, to render an account of them, to show affirmatively that they were such as were legally subject to that charge, and that he had made unavail-

ing efforts to collect them.   This he has failed to do.   On the contrary, although he has filed two tableaux, he has given no account whatever of $29,612, and it is to be presumed either that he has not administered that sum, or that it is composed of *bad* debts, so considered by himself; and in neither event is he entitled to commissions upon that amount.

He next contends that it rests upon the opposing creditor, in establishing his claim, to show that none of *Swazey's* creditors have been paid.   We think that the curator was only required to show the obligation of his predecessor, and the amount of the funds of *Swazey's* estate which he had received.   This he has done.   The burthen of showing that these funds have been legally applied then devolved upon the surety.   The ground taken that the debts of *Swazey* if not paid have been prescribed against, and that the surety is not accountable to that extent, is equally untenable ; for, if they had been extinguished in that manner, the extinction would have enured to the advantage of the succession, and not to that of the curator, or of his surety.

*Judgment affirmed.*