FREEMAN HURDLE v. JOHN F. LEATH.

Where doubts as to the propriety of an investment by a guardian are sought to be removed by him by false swearing, the question will be decided against him.

If a bond with two obligors, of whom the principal is solvent and the surety doubtful, be accepted by a guardian, he is liable if the money be lost.

Depreciated bank notes produced by a guardian on settling his accounts, are not to be allowed him at par; and *quære* if they should be allowed at all unless some satisfactory explanation accompany their pro-duction.

(*Boyett* v. *Hurst*, 1 Jon. Eq. 167, cited and approved.)

EXCEPTIONS to the report of the Clerk made under the order at last Term, *ante* 366.

The whole matter appears in the Opinion.

*Bailey*, for the exceptions.
*Bragg, contra.*

Settle, J. This case was before us at the last term, *ante*
:366. We have examined with care the voluminous papers
which accompany it, and find that the investigation is much
·simplified by the elaborate report of the Clerk of this Court,
·to whom the case was referred.

It was argued at this term upon exceptions to his report.
We will consider them in their order.

The defendant excepts:

1. "Because the Clerk disallows as a voucher and credit to
the defendant, the single bill signed by J. L. Garrison as prin-
·cipal, andFreeman Walker, F. Garrison, Susan P. Ector, and
Eliza J. Ector, as sureties, for the sum of $2435, due one day
:after date, and dated June 5th 1860."

This exception isoverruled.

The defendant states distinctly in his answer, that he had
"continued the money of his wards in the hands of the *original
borrowers*, who were regarded by the community as amply
solvent." He states further that he "has now the aforesaid
bonds, taken for the loan of his ward's money, on the *follow-
ing persons*, and at the *following times*, to wit: one on J. L.
·Garrison, and as sureties, Freeman Walker, F. Garrison,
Susan P. Ector and Eliza J. Ector, for $2435, and *executed
June·5th* 1860." The proof puts it beyond all doubt that the
.bond was executed originally by J. L. Garrision and Freeman
Walker only, and that F. Garrison, Susan P. Ector and Eliza
J. Ector did not execute it on the 5th of June 1860. They
.added their names to the bond some time in the year 1866;
·upon what consideration or for what purpose, the defendant
does not feel called upon to explain. It is to be observed that
this important disclosure did not come from the defendant; on
the contrary, he concealed it, and examined all of his witness-
·es as to the solvency of J. L. Garrison, Freeman Walker, F.
·Garrison, Susan P. Ector and Eliza J. Ector, in June 1860.
He put himself upon this issue in his answer, and he tried to
maintain it by proof. Shall he be permitted to change front

and say that the fact, that the three last named obligors signed in 1866, when he had sworn that they did so in 1860, is an immaterial circumstance? It is a circumstance which suggests forcibly that he was aware of the insufficiency of the original bond, and of his negligence in respect to the same; and that this was a contrivance to give it the appearance of being amply good, and thereby enable him to palm it off as a payment upon his wards.

"Where the profits of any ward's estate shall be more than sufficient to maintain and educate him, the guardian shall lend the surplus and all other sums of money in his hands belonging to such ward, upon bond with sufficient security, to be repaid with interest annually; and all bonds, notes and other obligations which he shall take as guardian, shall bear compound interest, for which he shall account; and when the debtor or his sureties are likely to become insolvent, the guardian shall use all lawful means to enforce the payment thereof, on pain of being liable for the same; and he may pay the same to the ward on settlement with him." Rev. Code, ch. 54, sec. 23.

Has the defendant used all lawful means to enforce the payment of this bond? No. On the contrary, he claims credit for prudence in having kept the fund in the hands of the "original borrowers."

There was much discussion at the bar as to the legal effect of this alteration of, or rather addition to, the bond. We will not trouble ourselves with the consideration of that question; for it is admitted by all, that if the bond was altered for a fraudulent purpose, the guardian ought not to be allowed to use it in a settlement with his wards. Courts will not countenance, much less encourage, bad faith. We entertain no doubt of a fraudulent purpose: the facts admit of no other construction.

2. "The defendant also excepts to the disallowance of the single bill signed by Frances Hornbuckle, as principal, and E. F. Watson, as surety, dated April 3rd 1861, for $2135."

This exception is overruled.

There is a mass of conflicting testimony as to the solvency of Dr. Watson, the surety, in 1861.

We will not attempt to review it here, being satisfied that it justifies the report of the clerk, in the assertion, that "while the evidence shows that the principal obligor was solvent and good for the sum named, it also shows that there was great doubt as to the solvency of the surety, E. F. Watson; that while the said Watson was reputed to have a large estate at the time he signed the bond, he was also reputed to be greatly involved and *doubtful* at the same date." Our statute makes it the duty of the guardian to lend the money of his ward upon " bond with *sufficient security.*" This language has received judicial interpretation, and means that not only the principal in the bond must be *sufficient,* but the surety also must come up to this high standard. In *Boyett* v. *Hurst,* 1 Jon. Eq. 167, we fined this position stated in the following strong language: " Suppose a guardian lends the money of his ward to a person who has property in possession to the value, say, of $100,000, and is not at all embarassed, nor engaged in any business of a hazardous nature, and it should happen that the borrower suddenly fails; the loss will undoubtedly fall upon the guardian: for, although he took a good note, yet he neglected to take good and sufficient security, and has not complied with the spirit of the statute; the policy of which is to require the investment to be secured by the bond or note of some person in addition to the borrower."

3. " The defendant excepts to the report of the clerk, because he has not allowed the defendant any commissions, either on his receipts or disbursements."

This exception was abandoned; as it appeared from the report that the clerk had allowed the defendant five *per cent.* commissions on all his receipts and disbursements.

4. " The defendant excepts also because the clerk has charged the defendant with an excess of disbursements over interest, in the account of George D. Hurdle."

This exception was not pressed upon the argument, and being untenable, we dismiss it without comment.

5. "The defendant also excepts to the report, because the

clerk disallows the bank notes received by this defendant and on file here, at par."

This exception is overruled.

We are inclined to think that there was more ground for an exception by the plaintiff than by the defendant, on this point. It was the duty of the guardian as we have seen, to lend this money on bond with good security. Had he done so? On this point he leaves us without light. But supposing that he had performed his duty in this respect, why did he change the investment *just before* the Surrender, and take in payment of a good bond in currency which was greatly depreciated? What were the circumstances which rendered this change necessary or even prudent? This requires explanation, but the defendant has not seen fit to give us any.

The Clerk allows the defendant the value of the bills at the time they were received, to-wit, twenty-five cents in the dollar. He certainly has no right to complain.

Let a decree be drawn in conformity with this Opinion.

PER CURIAM.                    Decree accordingly.