### THE STATE *v.* JOSEPH SHELTON.

Where, upon a trial for murder, there was a question whether the prisoner was in the military service of the United States on or before the 17th day of August, 1865, in order to ascertain whether he was entitled to the benefit of the Act of "Amnesty and Pardon," ratified the 22d December, 1866, and a witness testifying five years after the transaction, said that the homicide was committed "about the last of August, 1865," *it was held,* that there was some evidence, which ought to have been submitted to the jury, tending to show that the homicide was committed on or before the 17th day of August, 1865, and that it was error for the Court to instruct the jury that there was no evidence of that fact.

The Amnesty Act of December, 1866, does not embrace the case of a crime such as rape committed prior to the 1st day of January, 1866, and having no connection with war duties or war passions, but extends to the case of a prisoner who had committed a homicide prior to that time, which was directly connected with, and grew out of the events of the war, and the passions engendered by it, though he was not acting strictly under authority, or during active hostilities.

The cases of the *State* v. *Cook,* Phil Rep. 535, and *State* v. *Blalock,* Ib. 245, cited and approved.

This was an indictment for murder, tried before *Cloud, J.,* at the Fall Term, 1870, of the Superior Court of BUNCOMBE County.

There was a verdict of guilty, and from the judgment

thereon the prisoner appealed to the Supreme Court. In the view taken of the case by the Court, the facts are sufficiently stated in their opinion.

*Attorney General* and *Cocke,* for the State.

*M. Erwin,* for the defendant.

READE, J. The question is, whether the prisoner was entitled to the benefit of the State Amnesty Act, passed December, 1866.

The case sent up does not disclose the inducement to the homicide, nor the circumstances connected with it, except that as described in the indictment, it was by a pistol shot.

The case was made to turn upon the point, whether the prisoner was in the United States service when he committed the homicide. This was a question of fact for the jury to try, if there was *any* evidence tending to show that he was.

When the prisoner's counsel asked his Honor to charge the jury, that if they believed that the prisoner was in the United States service, when he committed the homicide, there was a presumption that it was done under orders, and he was entitled to amnesty ; his Honor declined so to charge, saying that it did not fit this case, for that the prisoner had failed to show that he was in the service. It will be seen, therefore, that his Honor decided this question of fact, which he ought to have left to the jury, if there was any evidence tending to prove it.

The evidence was, that the prisoner had been authorized to recruit for the 3rd North Carolina federal regiment, and then again for the 2nd regiment, and then again as late as March, 1865, he was authorized to recruit colored troops for artillery service in the United States. And he was actively engaged in recruiting as late as 22d July, 1865, and there was no evidence that his authority has ever been revoked. It is true that there was evidence that the 3rd regiment was

disbanded 17th August, 1865, and the 2nd regiment a few days before, but there was no evidence that the prisoner was present, or that he was a member thereof.

It would seem, that his recruiting authority did not connect him with any particular command. But suppose it did, suppose it had been shown that he was of the third regiment, and that his authority ceased when the regiment was disbanded 17th August, 1865, still it was a question for the jury, whether the homicide was before or after 17th August. The witness speaking of the transaction five years after it occurred, said it was "about the last of August," was it for his Honor to say, whether that was before or after 17th August? Suppose the witness's recollection to be reliable, what did, "about the last of August" mean ? Did it mean the last day, or the last part, or half? The 17th is of the last half; and "*about*" the last half, might have left it, even before the 15th. This was clearly a question for the jury. And because it was not left to the jury, the prisoner is entitled to a *venire de novo*.

We think it proper to say further, that there was upon the trial much too narrow a view taken of the Amnesty Act.

We take it that the homicide grew out of the war—else why was amnesty considered in connection with it? for in *State* v. *Cook*, 1 Phil. R. 535, we decided that only those who committed crime by reason of their connection with the war were entitled to amnesty. As, for instance, one who committed rape, would not be presumed to commit it with his war duties, or war passions. Suppose then that the prisoner was not acting strictly under authority, or during active hostilities; yet, if the homicide was directly connected with and grew out of the events of the war, and the passions which had been engendered by it, and was committed prior to 1st January, 1866, we think the spirit, if not the very letter of the amnesty act embraces it. If this be not so, what does the act mean by extending its provisions to 1st January,

1866 ? The war closed in the spring, 1865. There were no officers or privates acting under orders as late as January, 1866, certainly not on the Confederate side. And yet by the express terms of the act, all who had been connected with the army on either side, and committed crimes growing out of the war up to 1st January, 1866, should have amnesty. There must have been some reason for this. The reason is manifest. In some portions of the State, and especially in the West, where this homicide was committed, the people were divided, some fighting for the United States, and some against it, and many had to leave their homes and families. These persons had to return and meet each other, and learn of the destruction of their property and the outrages to their families and friends. And our legislators knew that, just as the ocean is angry, long after the storm has passed, so the passions of men do not become calm in a day, after a war. And the object was to show the same clemency to criminals who acted under the frenzy of vengeance after the war, and up to 1st January, 1866, for outrages committed during the war, as to those who committed the outrages. Amnesty is an act of grace, to be construed liberally in favor of the subject; it being the highest respect to the government to suppose that its most amiable prerogative was not intended to be exercised sparingly. *State* v. *Blalock*, Phil. R. 245.

There is error. Let this be certified.

Per Curiam. *Venire de novo.*