A. H. SUDDERTH, Guardian, v. R. D. McCOMBS and D. T. SUD-
DERTH, Adm'rs.

The Superior Court has no original jurisdiction of an action for an ac-
count by an existing guardian of infant children against their former
guardian; such action must be brought in the Court of Probate.

In a case in which, under the circumstances, a guardian was justified in
taking Confederate treasury notes for his wards, during the late civil
war, he will be justified in having converted them into Confederate
bonds even so late as the year 1864.

Where a guardian, in the years 1859 and 1860, received bank notes for
his wards and failed to invest them for their benefit, he will be charged
with the amount of the notes with interest from the date of their re-
ceipt, unless he can show some good excuse for his apparent default.

The reception by a guardian of Confederate money in the early part of
the year 1865 for the solvent debts due his wards was apparently inex-
cusable, and it will be for the guardian to show circumstances in justi-
fication of his act.

The cases of *Emmerson* v. *Mallett*, Phil. Eq. 234, and *State ex. rel. White*
v. *Robinson*, 64 N. C. Rep. 698, cited and approved.

This was an action brought in the Superior Court of
CHEROKEE County, by the plaintiff as guardian, against the
administrators of the former guardian of his wards for an
account. There was a reference for an account, and upon
the return of the report both parties filed exceptions, which
came on for hearing before his Honor, *Judge Cannon*, and
from his judgment thereon the plaintiff appealed.

No statement of the facts is necessary, as it will suf-
ficiently appear in the opinion of the Court.

*M. Erwin* for the plaintiff.
No counsel *contra*.

RODMAN, J. This is an action by the guardian of the
infant children of Abram Harshaw against the defendants as
administrators of A. Sudderth, the former guardian, brought
in the Superior Court of Cherokee County. An account was

taken and reported by the order of the court, to which exceptions were filed by both parties, and it is by appeal from the Judge's rulings upon these exceptions that the case comes to this Court.

We have decided in *Rowland* v. *Thompson*, at this term, that the Superior Court has no original jurisdiction of an action by a ward against his guardian for an account, but that it must be brought in the Probate Court. Of course the same thing is equally true of an action by a guardian against the administrators of a former guardian for a settlement of his guardian account. The present action must therefore be dismissed.

But as the questions presented by the exceptions will in all probability arise in the course of taking the account in the Probate Court, and our opinion was invited by counsel, and as the principal difficulty in dealing with them arises out of the absence of full statements in the report of the facts upon which they must be decided; we think we may not improperly present the views which we take of them.

The plaintiff excepts to the report because:

1. He is required to receive $7,000 of Confederate Treasury notes, bonds, &c., and that the defendants are credited with the same. On that point the report states that the former guardian had collected considerable amounts in Confederate money which on the 28th of March, 1864, he invested in Confederate bonds and certificates. Properly to pass on this exception it is necessary to know when and under what circumstances the Confederate money which the guardian converted into bonds was received. On this point nothing is stated in the report, nor so far as we can see in the evidence. If the Confederate money was received under circumstances which justified it, (and what those circumstances are has been defined in several decisions of this Court,) and if the guardian could not by ordinary diligence have disposed of it in some better and safer way, he would

be justified even so late as March, 1864, in changing it for Confederate bonds, which were at least no worse than the currency, and as bearing interest, if anything a little better. The time and circumstances of the receipt of the currency is therefore the proper subject of inquiry, as the liability of the guardian will depend on his ability to justify the original receipt, and not on the mere conversion into another form of the same security. If the $1,200 paid by Joshua Harshaw in the Spring of 1863, was a part of the $7,000, it will be proper to inquire whether the payment was passed on the guardian by Harshaw, and into the other circumstances of the transaction, keeping in view the rule laid down in *Emerson* v. *Mallett,* Phil. Eq. 234, and *State rel. White* v. *Robinson,* 64 N. C. 698. We are inclined to think *upon the evidence as it stands* the defendants would be chargeable with this sum of $1,200. As to the rest the facts are too vague for even a conjecture.

2. That defendants are credited with $1,023, which their intestate received in Bank bills in 1859 and 1860 and failed to invest and which they now offer to pay in the same bills to the plaintiff.

*Prima facie,* bank bills could have been safely loaned out in 1859 and 1860, and in the absence of some good reason to the contrary, it was the duty of the guardian to have done so. The defendants therefore, unless they can show some excuse for the default which does not appear in the present report, are chargeable with that sum and interest from its receipt.

3. That defendants are credited with $877.91 which their intestate received in Confederate money in 1865. The report does not state the circumstances under which this money was received in 1865, and it is therefore impossible to say whether or not its receipt was excusable. If it was voluntarily received in payment of solvent debts, it was not ex-

cusable, and it will be for the defendants to show circumstances to justify the apparent negligence.

4. That defendants are credited with $575, received by their intestate in May, 1864, in North Carolina treasury notes, being for the hire of certain negroes.

The testimony of A. H. Sudderth leaves it doubtful what the contract about the hire of the negroes in 1864 was. We are inclined to think as the evidence stands at present that the defendants are entitled to that credit.

Those observations will probably render it unnecessary to consider the exceptions of the defendants.

The action is dismissed.

PER CURIAM.                     Judgment reversed.