STATE on the relation of JOHN N. WHITFORD and wife MARY
*v.* WILLIAM FOY and another.

Under the provision in the Revised Code, ch. 54, sec. 23, authorizing a
guardian to lend the money of his ward "upon bond with sufficient
security," he might, upon a loan before the late civil war, have taken
a bond secured by a mortgage of slaves, and cannot now be made re-
sponsible for the loss of the debt by the emancipation of the slaves.

A guardian who, before the late civil war, took from the administrator of
the father of his wards certain promissory notes as a part of the effects
of his wards, but did not collect them and lend the money upon bonds
with sufficient security taken to himself as guardian, is not responsible
for the amount of them if they were lost by the events of the war with-
out any neglect or default on his part, but he is responsible for the
annual interest which he might have collected and invested for their
benefit.

A bailee who misuses the thing bailed, thereby converts it to his own
use, and becomes liable for its value, whether any loss occurs from
such misuser or not; but that rule does not apply to a trustee, who,
when no fraud is imputed, is only liable for a loss resulting from his
culpable negligence with regard to his trust.

A guardian is not responsible for having received bank notes and Con-
federate money before March, 1862, and did not invest it for the bene-
fit of his wards, when it is shown that he made a *bona fide* effort to do
so, but was prevented by the events of the war.

In taking an account of a fund in the hands of a guardian in which two
or more wards are interested, it is proper to state a general account of
the whole fund in the end of each year, and also a separate account
with each ward to the end of the same year, crediting the ward with
his share of the balance found owing on the general account, and de-
biting him with any proper debits peculiar to himself. In this way
the balance due to each ward at the end of each year is ascertained;
and, upon the death or coming of age of one of them the sum due to
him will be payable immediately and will cease to bear compound in-
terest.

A guardian will be allowed for reasonable counsel fees paid for advice
and assistance in the management of his trust, and he may be allowed
also for the fees paid to counsel in making a fair defence to the suit
brought against him for an account and settlement of his guardianship.

Reasonable commissions will always be allowed to a guardian unless in
cases of fraud or very culpable negligence. The rate will depend upon

a variety of circumstances, such as the amount of the estate, the trouble in managing it, and whether fees have been paid to counsel for assisting him in the management, the last of which will lessen the rate.

Commissions should be allowed a guardian on the amount of notes and other securities for debt delivered to the ward upon the cessation of the guardianship.

The cases of *Christman* v. *Wright,* 3 Ire. Eq. 549, *Boyet* v. *Hurst,* 1 Jones Eq. 171, *Hurdle* v. *Leith,* 63 N. C. Rep. 597, *White* v. *Robinson,* 64 N. C. Rep. 698, *Bell* v. *Bowen,* 1 Jones 316, *Foard* v. *Atlantic & N. C. R. R. Co.,* 8 Jones 235, *Ashe* v. *DeRossett,* 5 Jones 299, *Boyle* v. *Reeder,* 1 Ire. 607, *Emerson* v. *Mallett,* Phil. Eq. 234, *Wood* v. *Brownrigg,* 3 Dev. 430, *Hester* v. *Hester,* 3 Ire. Eq. 9, and *Shepard* v. *Parker,* 13 Ire. 103, cited and approved.

This was an action upon a guardian bond, in the progress of which an account was taken to which both parties filed exceptions, which coming on to be heard before his Honor, *Judge Clarke,* at the Fall Term, 1870, of CRAVEN Superior Court, those of the plaintiffs were overruled and those of the defendants sustained, and the plaintiffs appealed. The exceptions are sufficiently stated in the opinion of the Court.

*Bragg & Strong,* for the plaintiffs.
*Manly & Haughton,* for the defendants.

RODMAN, J. This is an action on the bond given by the defendant, as guardian, of the feme plaintiff. An account was taken to which both parties excepted, and it comes before us by appeal from the rulings of his Honor, the Judge below, upon those exceptions.

*Exceptions of defendant.*

1. That defendant is improperly charged with the note of one Andrews for $700 and interest. It appears from the testimony of the defendant that this note was taken by him several years before the war, and that instead of being secured by individual sureties, it was secured by a mortgage on three slaves, worth at that time much more than the amount

of the debt. The objection is, that taking such security was not a compliance with ch. 54, sec. 23, Revised Code, which requires individual sureties. That section requires the guardian to lend his ward's money "*upon bond with sufficient security,* to be repaid with interest annually," &c., and also, "*when the debtor or his sureties* are likely to become insolvent, the guardian shall use all lawful means to enforce the payment thereof, on pain of being liable for the same, and he may pay the same to the ward on settlement with him."

The counsel for the plaintiff referred us to the cases of *Christman* v. *Wright,* 3 Ire. Eq. 549; *Boyet* v. *Hurst,* 1 Jones Eq. 171; *Hurdle* v. *Leith,* 63 N. C. 597, and State *ex rel. White* v. *Robinson,* 64 N. C. 698, as construing this statute to forbid a guardian from taking any other security upon a loan of his ward's money than a bond with sureties. We think a different conclusion must be drawn from *Christman* v. *Wright.* There, the plaintiff, as guardian of his brother, held the note of Wright with Armstrong and others as sureties, which was perfectly good; at the request of Wright he gave up that note, and took from Wright a note made by him alone, secured by a mortgage on land; it turned out that the land was, at the delivery of the mortgage, subject to the lien of judgments for an amount exceeding its value, so that the note and mortgage were valueless; the plaintiff filed his bill to subject the sureties upon the original note, on the ground that he had been induced to surrender it by fraud. The Court refused the relief because the fraud was not proved, and Nash, J., delivering the opinion of the Court, intimates that the guardian must bear the loss. But that was not a question before the Court, and the opinion might have been justified by the manifest want of prudence in the guardian in not ascertaining the existence of the liens upon the land. The Judge nowhere expresses any doubt of the right of a guardian to invest upon

real security, which it would have been in the course of his reasoning to do, if he had entertained any.   On the contrary, he says, " He (the guardian) concluded landed estate was better than personal security, and in general his reasoning would have been right; in this instance it has proved fallacious."

In *Boyet* v. *Hurst* the guardian had loaned the ward's money to a trading partnership, composed of two partners, which was in good credit and possessed of large means, but he had taken no additional security of any kind.   The firm afterwards became insolvent, and the guardian was held chargable with the loss.   Evidently the case is not in point. But the counsel relies on some expressions found in the opinion of the Court delivered by the Chief Justice, " We concur with the counsel of the defendant, that the security meant is personal security, and that a guardian is not, by our law, as he is by the law of England *required* to invest the funds of his ward upon real or government securities. So if he takes good and sufficient personal security he has complied with our statute, *but he must take security* of some kind."   Again, " The policy of the statute is to require the investment to be secured by the bond or note *of some person* in addition to the borrower."   These expressions even if taken most strongly in favor of the view of the plaintiff, give it but little support, and are capable of being understood otherwise.

But in truth they have no bearing at all on the present question, which was not then raised, and could not have been in the mind of the Chief Justice.   For similar reasons the other cases cited are even less applicable.   So we are left to the statute itself.

The statute, as already quoted, requires the guardian to enforce payment of any bond taken by him, " when *the principal or his sureties* are likely to become insolvent."   These words undoubtedly show that the guardian was authorized

to take bond with individual sureties ; and probably it was contemplated that such would be, as we know that in fact it became, the most usual form of security. But we do not think that the inference can be drawn, that this was the only form of security which a guardian could take. By the English law a guardian could invest only in government securities, or perhaps on mortgage on real estate. For obvious reasons this rule in its exclusiveness, was not applicable to North Carolina in its early condition. Hence the statute directs the guardian to take "bond with sufficient security;" leaving the nature and sufficiency of the security, to the judgment of the guardian, and adds that in the event of his taking a bond with sureties, he must enforce payment if either principal or sureties are likely to become insolvent, or he will be liable for the debt. We think the Act was an enabling, and not a restraining one ; that it was intended to enable a guardian to take a form of security that he could not have taken before, and not to restrain him from taking what he might have taken always before; to make another form of security lawful, and not to make the old forms unlawful. Indeed a lien on property, if prudently taken, after inquiry into the title and value, is, in its nature, a safer security than the suretyship of individuals ; for their solvency depends at last on their property, and the property in their hands besides being subject to the risk of destruction or robbery, is subject to the additional risk that they may fraudulently or imprudently make way with, or incumber it, to the detriment of the particular creditor. If an individual surety having property of triple the value of the debt is a sufficient security, it would seem clear, that a lien on the property itself, must be sufficient also. In this case, we think the defendant acted with sufficient prudence, and the exception is sustained.

2 and 3. That the defendant is charged with certain notes which were received by him from Hill, the administrator of

Williamson, the father of the ward, upon a settlement in 1855, and is required to pay the same in money instead of in the notes themselves.   These notes it is admitted were good when they were received, and so continued up to 1862, or thereabouts, when the enemy took possession of Newbern and the adjacent country in which the parties and the debtors lived, and they have since become insolvent, through the results of the war.   It is not alleged that the defendant has been guilty of any want of diligence in taking, or in endeavoring to collect them; but, it is alleged, that by neglecting from 1855 to 1862 to convert them into notes payable to him as guardian, he has made them his own, and is not entitled to pay them over specifically to his wards. In support of this view it is argued that if the guardian had converted these notes into others, *perhaps* some of the others would now be good, and that inasmuch as he has neglected his duty, he must be responsible for all the loss which has *followed,* whether it can be traced to that neglect *as a cause* or not.   For this principle we are referred to *Bell* v. *Bowen,* 1 Jones 316.   In that case the defendant hired a slave of the plaintiff, and agreed not to take him out of the country, except at the hirer's risk.   But in the course of his opinion, the C. J. says : "Suppose the slave had been hired with a stipulation that he was not to be carried out of the country. It is settled that by taking him out of the country, the bailee becomes liable to any loss that may happen without reference to the question of neglect."   But this doctrine is, we think, peculiar to the law of bailments.   The ground of it, as stated by Story (Bailments s. 413,) is, that, " by the misuser, the bailee converts the property bailed," and hence it would seem becomes liable for the value of the article, whether any loss occurs or not.   But such a rule has never been applied to other contracts, still less to a mere neglect by a trustee, where no fraud is imputed.   As to contracts in general the rule of damages is well settled, that a plaintiff

can only recover such damages as may be considered as having been within the view of the parties, and are the direct and necessary result of the breach. *Foard* v. *Atlantic and N. C. Railroad*, 8 Jones 235. *Ashe* v. *DeRossett*, 5 Jones 299. *Boyle* v. *Reeder*, 1 Ire. 607. Mayne on Damages 14. As to trustees, the Courts require of them the highest degree of good faith, and ordinary diligence; for any damages which result from their culpable negligence they are liable. Story Eq. Jur. 794. *Osgood* v. *Franklin*, 2 Johns Ch. R. 1. S. C. 14 Johns R. 527, but to nothing more. It has never been held that a mere neglect to change an investment amounts to a conversion of the security. The guardian therefore cannot be held liable for the loss of these notes merely by reason of his omission to change their form, or to take others payable to himself as guardian. Had he done so, and had the notes thus taken by him proved insolvent as these have, the same argument might have been then used to charge him that now is. It might have been said, that there was no reason for the change, and it was therefore laches, and that by collecting the interest annually, and investing it, he might in effect have made them bear compound interest. If the defendant is charged with these notes received from Hill, he must upon delivering them up be discharged from the principals of them.

We think, however, that it was the duty of the defendant to have collected the interest on these notes annually, and to have invested it for the benefit of the ward. The loss of this interest up to March, 1862, or to whatever other date, at which, by reason of the war it became impossible to collect it, is a loss directly caused by the omission of the defendant, and he is therefore liable for such a sum as the interest would amount to at the present time, if he had annually collected and invested it, as he ought to have done.

These two exceptions are sustained with the above qualification.

4. That defendant is not credited with $900 in Confederate money which he attempted to invest in Confederate bonds.

It appears that this money was received by the defendant before the capture of New Berne, which was on the 14th March, 1862; the defendant says he could not loan it out safely to individuals, and that he gave it to a Col. Hite to invest, in Confederate bonds, who gave it to a soldier for the same purpose, who was captured by the enemy, and the money was thus lost. It would have been equally lost if it had been invested. Upon the principles established by this Court respecting the receipt of Confederate money by trustees and agents, in *Emerson* v. *Mallett,* Phil. Eq. 234. State *ex rel. White* v. *Robinson,* 64 N. C. 698, and other recent cases, we consider that the defendant ought not to be charged, or if charged, ought to be credited with this sum.

It is argued for plaintiffs that the defendant ought to have sought the plaintiff, Whitford, after his marriage with the ward, and paid him this money. Whitford was in the Confederate army, and we think the defendant was under no obligation to hunt him up in camp and make a tender of the money, during the war. If Whitford had demanded payment and been refused, the case would be different. After the war, the defendant met Whitford and might then have tendered him the worthless money, and his share of the notes, but it was difficult to tell specifically what Whitford was entitled to; there is no proof that the defendant failed to use due diligence in securing the remnants of the property; the losses had then been all incurred, and we do not think under all the circumstances that the defendant incurred any additional liability by his delay after the war in accounting with the plaintiffs. This exception is sustained.

5. That the balance found owing by the defendant is not correct. This will depend upon the state of the account after it shall be corrected according to this opinion. It needs therefore no further observation.

6. That the report is incomplete, in that while the Commissioner reports the aggregate of liabilities against the defendant in this and in the two other suits on his guardian bond at $19,298 94, and the aggregate of credits reported and allowed is $35,602 66. Yet the said credits are not apportioned, nor the actual result stated in each case, after allowing the credits to which the defendant is entitled in each case.

We do not understand this exception. If it means that the Commissioner has not reported the sum for which each ward (or his representative; is entitled to judgment, it would seem on a reference to the report not to be sustained, as a fact. Of course that must be done before any judgment can be rendered. But as possibly, it may have some reference to the manner of stating an account in a case like this, it will not be amiss to state what we consider the proper and most convenient course, although any other which would arrive at the same result, would do.

Three wards were equally interested in a common fund, and must bear all losses affecting it equally. So long as all remained infants, each was entitled to have his share of the fund bear compound interest, but when any one ceased to be entitled to this privilege of an infant, by death or marriage, the share of that one becoming immediately demandable, ceased to bear any more than simple interest, although if the guardian received more, he would be liable to pay it. *Wood* v. *Brownrigg*, 3 Dev. 430.

It was necessary therefore to state a general account of the whole fund to the end of each year, and also a separate account with each ward to the end of the same year, crediting the ward with one-third of the balance found owing on the general account, and debiting him with any proper debits peculiar to himself. In this way the balance owing to each ward at the end of each year is ascertained, and upon the death of Frances, for example, the sum due to her, becom-

18

ing immediately payable to her administrator, is converted into an ordinary debt, and henceforth bears only simple interest. *Ford* v. *Van Dyke,* 11 Ire. 227. We call the attention of accountants to the mode of proceeding here suggested, as the accounts reported in cases like this are often in a state of unintelligible confusion.

*Exceptions of plaintiff.*

1. That the defendant is credited with $500 paid to his counsel. There were three wards of the defendant; he gave a single bond for the benefit of all of them; one of them died in June, 1858, the other two married, one the plaintiff in this case, in 1860 or 1861, and the other in December, 1865. The administrator of the deceased, and each of the others, has brought a separate suit on the bond. In each case the Commissioner has credited the defendant with $500 paid to counsel, making $1500 for services in the management of the estate. It is not disputed that a trustee may, if necessary, and ought to employ counsel to advise him in the execution of his trust at the expense of the trust fund. This is considered settled here, although in some of the States a contrary doctrine prevails. 2 Wm's. Ex'rs. 1679. Am. note, citing *Pusey* v. *Clemson,* 9 Serg. and Rawle 209. (Pa.) and *Satterthwite* v. *Littlefield,* 13 S. and M. 302, (Miss.) Any reasonable sum paid for this purpose is a proper credit. It is said that the sum paid in this case was excessive. The Commissioner finds no facts as to the necessity for, and the extent of, the services of counsel. The only evidence upon the point is to the effect that the guardian prosecuted one suit against Hill, the administrator of the father of his wards; a second suit to recover the value of a slave of the ward's that was drowned; some fifty-five or sixty actions upon notes held by the defendant as the property of the wards, and defended the present actions. Of the difficulty and labor attending those suits there is no evidence. The sums paid by the defendant were probably reasonable as between the

defendant and his counsel. But it does not appear to us that so large an expenditure was required for the benefit of the estate. In that point of view we think it excessive.

We think at all events the Commissioner should not have allowed a gross credit of this sort without some bill of particulars showing in sufficient detail the nature and extent of the services. It is also a circumstance to suggest criticism that the defendant from 1854, when he became guardian, does not appear to have paid any thing to counsel until about the time of the institution of these actions; neither does it appear that the counsel to whom the payment in question was made, rendered services in any of the actions prosecuted by and against defendant before 1862; on the contrary, Mr. Stevenson is stated to have been the counsel of the defendant in the action by the administrator of Francis T. Williamson against him, up to his death in 1861. For these reasons we are not able to decide on this exception, and are compelled to refer this item of credit to the Commissioner for further inquiry. There was a view of this question which was urged by the counsel for the plaintiff in his argument, which it is proper to notice. He contended that in estimating the sum proper to be credited to the defendant for counsel fees, the Commissioner should not consider any sum paid to counsel for services in the present action; that such payments *could not* be for the benefit of the wards; that the services were in their nature for the individual benefit of the defendant, either as remedying his own neglect to keep an account, or in enabling him to postpone or reduce a just demand. We do not quite agree with the counsel. It is true that a defence *may* be so conducted as to make it manifest that the object is of the character supposed, and in such a case no Court could allow the defendant credit for any sum paid for such an abuse of the machinery of the law. But it cannot be presumed that every defence is of this character: if it be so, it must be

shown.  Ordinarily it is the duty of every trustee, upon a demand for settlement, to present his account; we think he is entitled to be credited for a reasonable sum paid to an accountant or attorney for stating the account; we think, too, if there is any difficulty in doing it, he is entitled to the advice of counsel and to be credited for any reasonable fees paid for that purpose.  But for any payment beyond this we think it must be an exceptional case to entitle him to credit.  The question in all cases is whether the payment was made fairly and on account of the estate.  This is the rule established by the decision of the Court upon the fourth exception of the defendant in *Hester* v. *Hester*, 3 Ire. Eq. 9, and it seems to us to be founded in reason and justice. With this statement of what we consider the principles upon which the claim to this credit must be decided, we may hope that it will be adjusted by the parties themselves.

2.  That the Commissioner has credited the defendant with bank notes received by him prior to the year 1862, to the amount of $2,851, and Confederate notes received prior to the year 1862, to the amount of $372 08.  We refer to what was said upon the 4th exception of defendant.  It is not attempted to be shown that the defendant could have made any safe investment of this money.  He may reasonably have supposed as to the bank notes, that the credit of the banks was better than that of any individuals, and that for the sake of that difference it was prudent even to lose the interest during the war.  We cannot require prescience of trustees, nor must we judge them by the light of the present day.  This exception is not sustained.

3.  That the Commissioner decides that the plaintiff shall receive as cash in payment of the aggregate amount due, to-wit: $12,463 40, the sum of $9,963 23 in notes or judgments.

The statute (Rev. Code, ch. 54, sec. 23) requires the ward to receive of his guardian all securities properly taken by

him, and for which he has not made himself liable by his laches. If there be any bond or note which the ward is required by the Commissioner to take which is excluded by this rule, it should have been particularly specified in the exception, and the case made upon it could then have been considered. All the securities which a guardian takes upon a loan of his ward's money, are specifically the property of the ward. If they become worthless through the laches of the guardian, he is chargeable with their value. If, having securities in hand which he supposes good, he advances his own money to the ward, whereby upon a settlement it turns out that he has on hand guardian securities to a greater sum than the ward is entitled to, he is entitled to retain from the securities *pro tanto.* How it would be in case where some of the securities had become worthless without default by the guardian, while others remained good; whether the guardian could retain the good ones to the extent of his advances, or should share them *pro rata* with the ward, or would be compelled to take the worthless ones, on the ground of a voluntary confusion of goods, is a question which does not arise here, that we can see.

This exception is not sustained.

4. That the commissions allowed the defendant are excessive.

We agree with the plaintiff; we think 2½ *per cent.* on each side of the account sufficient; the more especially as so large a part of the business seems to have been done by the defendant's Attorneys.

5. That the Commissioner has credited the defendant with commissions on notes and judgments amounting to $9,963 23, which he decides that the plaintiff shall receive as cash.

As a matter of law, commissions may be allowed to a guardian upon notes which he delivers over to the ward. *Shepard* v. *Parker,* 13 Ire. 103. Succession of Johnson, 1 La. Ann. Rep. 75. Of course the fact that the notes had

become worthless without his default, would have its weight in estimating the rate of commissions to be allowed him, just as any other accident affecting the value of the ward's estate would. In the allowance of commissions which we have considered adequate, we have assumed, that they would be computed on these notes. This exception is not sustained.

6. That the Commissioner has allowed defendant any commissions.

This exception is not sustained; it is only in a case of fraud, or of very culpable negligence, that a trustee will be punished by being deprived of his commissions.

The case is retained in this Court for further directions: the report is remanded to Commissioner Bryan, in order that he may modify it in accordance with this opinion; and may take testimony on the matter of the plaintiff's first exception, if the parties shall desire it. Each party must pay his own costs in this Court. Let this opinion be certified.

PER CURIAM.                    Judgment accordingly.

NOTE.—Two other suits on the same guardian bond as that in the above case, to-wit: *State on the relation of Hardy Whitford and wife* v. *William Foy and other*, and *State on the relation of John N. Whitford, Adm'r of Frances Williamson* v. *William Foy and another*, were decided at this Term, and the same principles of law were expressed as are contained in the above opinion.