ALFRED DOCKERY *v.* R. S. FRENCH, JOSEPH THOMPSON and T. J. MORRISEY.

A debtor may lawfully pay his debt to a trustee in depreciated currency under ordinary circumstances, if the trustee be willing to receive it. But if such debtor fraudulently colludes with a trustee, and obtains a release without consideration, or upon a consideration which he knows to be grossly inadequate, such release will not be permitted to avail him in a Court of Equity; the debt still exists for the benefit of the real creditors, the *cestui que trust*, who may enforce it against the debtor, and is entitled to the benefit of all securities attached to it.

The payment of a note due a guardian for the benefit of his wards, with Confederate money on the 6th day of February, 1864, which note was secured by a mortgage on land, was forbidden, at least from public policy, and was *prima facie* fraudulent, and only extinguished the debt to the amount of the value of the Confederate money.

(The cases of *Emmerson* v. *Mallett*, Phil. Eq. 234; *Sudderth* v. *McCombs*, 65 N. C. Rep. 186; and *Purser's* case, Ibid, cited and approved.)

SETTLE, J., did not sit on the argument of this case.

This was a CIVIL ACTION, to compel one of the defendants, a trustee, to convey the legal title to certain lands to the plain-

tiff, and also for an injunction, tried before *Kerr, J.,* at the Spring Term, 1875, of ROBESON Superior Court.

This case was before this Court at June Term, 1873, upon an appeal by defendants from an order, continuing the injunction against the sale of the premises until the hearing. See 69 N. C. Rep., 308. Subsequently by consent it was referred, when at Spring Term, 1875, the referee filed the following report, to-wit:

"Having been appointed at Fall Term, 1874, of Robeson Superior Court, referee to try the above entitled action, I proceeded therein on the 12 day of November, 1874, at the Court House in Lumberton in said county, all parties with the counsel, being present, and full argument of said counsel being heard,

I find the following facts:

The defendant, Thomas J. Morrisey, borrowed of the defendant, Joseph Thompson, as guardian of the minor heirs of Wm. Blount, on the 28th February, 1859, the sum of four thousand three hundred and sixty-three dollars and 56 cents of his wards' money; and gave his promissory note for that sum, payable at twelve months from that date, with interest to be compounded. On the — day of March following, the said Morrisey, for the purpose of securing the payment of the said promissory note with the interest thereon; and also for the further purpose of indemnifying the said Thompson, individually, against loss by means of his suretyship for the said Morrisey, upon a promissory note to the Bank of Fayetteville, for four thousand dollars, payable at ninety days from date of 9th March, 1859, executed a deed of trust to the defendant, R. S. French, for three thousand four hundred and forty acres of land in said county, adjacent to the town of Lumberton, and also for ten slaves.

In the said deed, it was provided, that said Morrisey should remain in the quiet occupation and possession of the said land and slaves until the 1st day of January, 1861; and then should the said debts, or either of them, in whole or in part, remain

due and unpaid, the said French, trustee, upon the request of the said Thompson, was to proceed to sell the said land and slaves, or so much as might be necessary and requisite for that purpose ; and out of the proceeds of such sale, first retaining 5 per cent. commissions, to pay and discharge what should then remain due and unpaid on account of the said debts or either of them, and the balance to pay over to the said Morrisey. Thirty days notice of the time and place of said sale was to be given by advertisement at the Court House door, and other public places in the county. If the said Morrisey should pay the said debts, on or before the said 1st day of January, 1861, then the said deed was to be null and void, otherwise to remain in full force and effect.

In the fall of the year, 1863, the defendant Morrisey applied to the said Thompson, to know if he would receive payment of the note, due the said Thompson as guardian, in Confederate money, (having already paid off the note due the Bank of Fayetteville.) He was informed by Thompson, that he would receive payment in Confederate currency. The defendant Morrisey then borrowed of the plaintiff, Alfred Dockery, ten bales of cotton, to be returned in kind; took the cotton to Wilmington, sold it, and with the proceeds, paid off his note to Thompson, as guardian, on the 6th day of February, 1864. Thompson received the payment willingly, but without the knowledge or consent of his wards, or of the trustee, French. The principal and interest of the note, at the time of the payment, amounted to five thousand eight hundred and twenty dollars ; and the value of the Confederate currency, paid in gold, was two hundred and seventy-seven dollars and fourteen cents. Thompson thereupon surrendered the note, and the deed of trust by which it was secured, to the said Morrisey, and made the following indorsement on the deed of trust, viz : ' Received on this deed of trust all the claims and interest to which I am entitled, and declare this instrument to be null and void, so far as I am concerned. 6th February, 1864. (Signed) Joseph Thompson.'

Thompson did not collect the money when it was due, because it was well secured and was not required for the use of his wards. Morrisey remained in possession of the land and slaves, until the slaves were emancipated by the results of the war.

On the 30th day of November, 1870, he sold and conveyed to the plaintiff, Alfred Dockery, three thousand and thirty-nine (3,039) acres of the said land—the same described in the exhibit, marked "B," attached to the complaint. The plaintiff, Dockery, did not request nor demand a conveyance of the said land from the trustee, French, until a short time before the commencement of this action. The consideration for the said land, agreed upon between Morrisey and Dockery, was ten thousand dollars, ($10,000,) and was paid and settled as follows: The ten bales of cotton which Morrisey owed Dockery, (Morrisey being unable to return it in kind,) was valued at twenty cents per pound and counted as cash; the balance of the purchase money, except two thousand dollars, was paid in cash. For the two thousand dollars, Dockery gave his promissory note, upon which five hundred dollars have been paid, and the balance is still due. Ten thousand dollars was a fair valuation of the said land at the time of the sale to Dockery. At the time of the sale, Dockery was shown by Morrissey the the note and deed of trust, with the receipt endorsed thereon. He also sought information respecting the title to the land, of an attorney familiar with Morrisey's business affairs, and was informed by said attorney, that there were no judgments against Morrissey which bound the land; but there was a possibility of trouble concerning it, from the wards of Thompson, owing to the fact, that they had not settled with said guardian, and that the settlement between Morrisey and their guardian, was made in Confederate money and late in the war —in 1864. Dockery thought no trouble could arise from that source, and so bought the land, with notice of said transaction in every particular.

At the time of the payment of the note and taking up the

mortgage by Morrissey, Confederate money was generally received by prudent business men in Robeson county in payment of *ante* war debts. But there was no evidence, that any person acting as guardian in Robeson county, as late as February, 1864, took Confederate money in payment of well secured *ante* war debts and released the securities.

At that time, Joseph Thompson was a man of large property, and had the general reputation of being a prudent business man. Thompson's guardian bond, on the 6th day of February, 1864, was good for ten thousand dollars. It is not good for that amount now.

" My conclusions of law upon the foregoing facts are, that the payment of T. J. Morrisey of the principal and interest of the note to Joseph Thompson, in Confederate currency, on the 6th day of February, A. D. 1864, and its acceptance by Thompson, was a payment and discharge of said debt; and that the said Morrisey, having paid the debt due the Bank of Fayetteville, upon which the said Thompson was his surety, was entitled to a re-conveyance of the mortgaged premises from the trustee, Robert S. French; and that the plaintiff, Alfred Dockery, having purchased Morrisey's equity of redemption, in the three thousand and thirty-nine acres mentioned in the complaint, is entitled to a conveyance of the legal title for the same from the trustee, French."

The defendants filed the following exceptions to the above report of the referee, in this :

(1.) That the payment by T. J. Morrisey of the principal and interest of the note to Joseph Thompson, in Confederate currency, on the 6th day of February, A. D. 1864, and its acceptance by Thompson, was a payment and discharge of said debt.

(2.) That the said Morrissey, having paid the debt due the Bank of Fayetteville, upon which the said Thompson was his surety, was entitled to a re-conveyance of the mortgaged premises, from the trustee, Robert S. French; and that the plaintiff, Alfred Dockery, having purchased Morrisey's equity

of redemption in the three thousand and thirty-nine acres, mentioned in the complaint, is entitled.to a conveyance of the legal title for the same from the trustee, French.

(3.) That the referee failed to give his conclusion of law, on the prayer of the defendants in their answer, that they were entitled to a sale of the land to satisfy the debt remaining unpaid and still due; and that the payment in Confederate money was only a payment *pro tanto.*

Upon the hearing in the Court below, his Honor overruled the exceptions filed by the defendants ; confirmed the report of the referee and gave judgment for the plaintiff.

From this judgment, the defendants appealed.

RODMAN, J. As Dockery purchased the land with full notice of all the circumstances attending the alleged payment by Morrissey, we are at liberty to consider him as standing in the shoes of Morrissey. It is properly conceded also, that the payment by Morrissey extinguished the debt to the value of the Confederate money on 6th February, 1864. So that the only question is, did it extinguish and satisfy the surplus of the debt beyond such value. A creditor in his own right, may receive payment in what he pleases, or may voluntarily release his debt. But it is otherwise with a trustee who is bound to protect the interests of his *cestui que trust.*

It has been long settled, in this Court at least, that if, during the war, a trustee in good faith, and exercising a prudent discretion, received payment of a trust debt in Confederate money, he incurred no liability thereby, notwithstanding the money was depreciated at the time, and afterwards became lost. On like grounds the debtor who made such payment, was discharged. If a trustee acting *mala fide,* or with gross imprudence, received payment in such money, he was liable to his *cestui que trust,* for any loss thereby sustained. But it would not necessarily, and in all cases follow, that the debtor still continued liable. This would depend upon his own *bona fides.* It may be admitted that a debtor may lawfully pay his debt to

a trustee in depreciated money, under ordinary circumstances, if the trustee be willing to receive it. There may be circumstances, making such payment at the time an advantage, or at least not injurious, to the *cestui que trust*, and the debtor is not bound to inquire, whether it be so in fact or not. But it is clear, that if the debtor fraudulently colludes with the trustee, and obtains a release without consideration, or upon a consideration which he must know to be grossly inadequate, such a release will not be permitted to avail him in a court of equity : the debt will still exist for the benefit of the real creditor, the *cestui que trust*, who may enforce it against the debtor, and is entitled to the benefit of all the securities attached to it. The fraudulent release of a trust debt, is analogous to a fraudulent sale of trust property, upon which the *cestui que trust* has his election, either to go against the trustee for the price, or to follow the property in the hands of the purchaser. The equity of this principle is so apparent, and the principle itself of such familiar application, that it seems unnecessary to cite any authorities to establish, or illustrate it. Nevertheless we refer to Story, Eq. Jur. sec's. 422, 423, 580, 581, 1256 to 1259, and the cases in this Court, cited by the counsel for the defendant. Is this a case in which that doctrine will apply ? In *Emerson* v. *Mallett*, Phil. Eq. 234, it was suggested that the receipt of Confederate money by a collecting officer, after 1863, was unauthorized, the depreciation being then so great, as of itself, to amount to notice from the party interested, that it should not be received. The position of a guardian who is under no requirement to collect, is very different from that of a collecting officer, who is ordered to collect. In *Sudderth* v. *McCombs*, 65 N. C. Rep. 186, it was held that a guardian who early in 1865 received Confederate money in payment of solvent notes, was apparently inexcusable. In *Purser* v. *Simpson*, 65 N. C. Rep. 297, it is said, that no fiduciary should have collected well secured notes, in Confederate money, after the 4th of July, 1863. At the date of the payment under consideration, $6,820.00 in Confederate

money was worth in gold only $277.14. The actual value of the money we must assume was known to both Morrisey and Thompson. The debt of Morrisey was amply secured upon land, the most stable of all property. No occasion of the wards required its collection. The counsel for the defendant do not impute any actual fraud either to Morrisey, or Thompson. But we are of opinion that under such circumstances, there is a legal intendment of fraud, which there is no evidence to rebut. There are some things which from public policy, and for the protection of *cestui que trusts*, must be assumed to be *prima facie*, fraudulent, or at least forbidden, and in that sense fraudulent: and we are of opinion that the payment which we have been discussing, comes clearly within that principle.

As the wards of Thompson are not parties to this action, no judgment for a sale of the land under the deed in trust can be made.

Per Curiam. Judgment below reversed, and the action of plaintiff dismissed.