The following are the substantial facts of the case, as agreed by counsel and sent to this Court:
The intestate died in February, 1864, and at February Term of Iredell Court of Pleas and Quarter Sessions, 1864, the plaintiff and one Theo. Williams were duly appointed her administrators, and soon thereafter sold off the perishable property; and at next Term of said Court, an order was obtained by the next of kin, to sell the slaves belonging to said estate, for distribution, and the plaintiff and his co-administrator were appointed commissioners by said order to make said sale, which they made on the 15th day of December, 1864. And the children and next of kin became the purchasers of all of said slaves. That all of these sales were made on a credit of six months, for notes and approved security, to be paid in North or South Carolina bank money, with the privilege of paying in such money at the time, if the purchasers preferred *Page 414 
to do so. One or two of the purchasers paid their purchases on the day of sale; but the others secured their bids according to terms of sale by giving notes, and giving each other as security. Of the purchasers at said sale was Richmond Speaks, then and now husband of Martha Speaks, and Anna Robeson; that Richmond Speaks gave his note, with said Anna Robeson security, and said Anna Robeson gave her note, with said Richmond Speaks as security. These parties, at that time, were all good, but by the results of the war, have all become insolvent; that soon after this sale, on the 15th December, 1864, Theo. Williams died and left plaintiff sole administrator of said estate; that the plaintiff, in the early part of 1865, and before the surrender, had collected on said sale notes to the sum of $1,325.00 in bank money of the States of North and South Carolina, and made a special deposit of the same a few days after he collected the same with C. A. Carlton, then cashier of the State Bank at Statesville; and that said money has remained in the possession of said Carlton from that time until taking of the account in this case, when it was delivered to the Commissioner. That two of the children and next of kin of plaintiffs intestate, lived in the State of Illinois, to-wit: Mary Williams and Lender Williams. But not long after the sale of said slaves, a portion of the children and next of kin of plaintiffs intestate, living in this State, claimed that the said Elizabeth held said slaves in trust for them at her death, and notified the plaintiffs of the fact, and that they claimed the entire fund in his hands arising from said sale.
At Spring Term, 1873, of Iredell Superior Court, the case was referred to R. A. McLaughlin, as a commissioner, to take and state an account, and pass upon all questions of law and fact that arose in the case. And he made his report to Spring Term, 1874, the case having been continued at Fall Term, 1873, under former order; and was heard upon exceptions by by plaintiffs, defendant, R. Speaks and wife.
The said commissioner found that there was no such equity and resulting trust as set up by a portion of the children, next *Page 415 
of kin, and parties to the proceeding, the whole interest in said fund.
The said commissioner further found that the $1,325.00 deposited with C. A. Carlton, was worth 25 cents in the dollar, soon after the surrender, and that they were now (not?) wholly worthless. And that the plaintiff had been guilty of negligence in not selling the same, and therefore, did not credit the plaintiff with this amount.
To the commissioner's finding and ruling with regard to this $1,325.00, plaintiff excepted, and the Court sustained the exceptions, and defendant, R. Speaks and wife excepted to the ruling of the Court. The notes of R. Speaks and Anna Roberson had not been collected, but were offered in evidence before said commissioner by the plaintiff, together with evidence tending to show that they were given at the date of the notes, and that they were now insolvent, and asked that they be allowed him in the settlement against the shares of said Speaks and Robeson. The commissioner allowed the note of said Speaks to set off his distributive share, being $139.82 more than his note, he allowed this amount in part satisfaction of the note of Anna Robeson and R. Speaks as security, her distributive share not being sufficient to discharge said note. And defendant, R. Speaks and wife excepted to this ruling of the commissioner. But the Court overruled this exception and found as a fact, from the testimony, that the slaves were bought by the husband, with the knowledge of the wife, Martha Speaks, and were used by the husband until emancipated, and ordered that the report be reformed in accordance with exceptions allowed, c.
From the above ruling, the defendants, R. Speaks and wife, being dissatisfied, prayed an appeal to the Supreme Court. Appeal granted and notice waived.
1. The administrator soon after the sale, December 15, 1864, *Page 416 
received $1,375 in notes of North Carolina and South Carolina banks in part of the purchase money for shares sold, and deposited the money in a bank at Statesville, where it remained until required in taking the account in this case, and has become worthless, is liable for the loss. There was carelessness and negligence. Sudderth v. McCombs, 65 N.C. 186;Whitford v. Foy, 65 N.C. 265; Atkinson v. Whitehead,66 N.C. 296.
2. The equitable chose in action of the wife cannot even, by the assignment of the husband, be taken from the former surviving heir, unless reduced into possession by the assignee during his life. Arrington v.Yarboro, 1 Jones' Eq. 73.
The chose in action of the wife becomes the husband's only when he reduces into possession and this is his voluntary act. It is not in the power of his creditors to coerce the application of his wife's choses in action to payment of his debts. More especially in this inadmissible since the Constitution secures all her property to her separate use.
1. The bank money deposited with Carlton arose from the sale of shares, in December, 1864, and would have been lost to defendants by emancipation but for said sale. There is no negligence here. Kerno v. Wallace,64 N.C. 187.
2. The terms of sale were for North and South Carolina bank money, and there was no negligence in plaintiffs receiving payment in that currency.
3. The plaintiff acted properly and prudently in making a special deposit of the money paid in. See Hogans v. Huffsteller, 165 N.C. 443;Shipp v. Hetrick, 63 N.C. 329.
4. As there was a dispute between the defendants as to who the fund belonged and as to how the same should be distributed. Plaintiff was guilty of no negligence in not paying the same out until that question was settled.
Again as to second exception:
1. The whole fund in dispute arose from the sale of slaves in *Page 417 
December, 1864, and would have been an entire loss to defendants but for said sale.
2. The terms of said sale, were at six months time for note and security payable in North Carolina and South Carolina bank money.
3. These slaves were all bought by the children and next of kin, who give their notes with each other as security, except one who paid the money down. These notes were all good when taken, but all become insolvent by theresults of the war.
4. It thus appears that there is really nothing substantial in either of defendants' exceptions. The money deposited with Carlton is found to be worthless at this time, and the notes uncollected are on insolvent persons. And if defendants should sustain their exceptions still they would not be benefited. The appeal is a chase after a shadow, and not a substance. As plaintiff cannot be held responsible for losses to the estate without negligence.
5. The facts in the case show that these notes could not have been satisfied in any other way than that adopted by the learned commissioner.
6. But is not the distributive share, whatever it is, going to Richmond Speaks, the husband? Is he not entitled to receive the same? And has not the commissioner properly applied his share to the payment of his notes?
And can his wife, if she is disposed, prevent his doing so? Mordon v.Mordon, 9 Ired. 304.
7. This is not a case involving the right of survivorship of the wife after the death of her husband — here both husband and wife "yet liveth."
He was a lucky administrator, who, having no effects of his intestate in hand except slaves in November, 1864, was enabled to make any money out of them for the benefit of the estate, either by selling or keeping them.
In our case, the slaves were sold upon the petition of the next of kin, the only persons interested, with the concurrence *Page 418 
of the administrator, upon time, with the privilege to the purchaser to pay cash at the sale, in bank bills, instead of giving bond and security. All the slaves were bought by the next of kin, who gave their bonds with sureties, except one, who paid in bank bills. There was certainly nothing imprudent in this arrangement.
Before the sale bonds fell due, all the obligors were insolvent, by the events of the war; so that nothing remained except the bank bills, which were paid at the sale; and they were on special deposit in bank, and were worth twenty-five cents in the dollar. This was divisible among the next of kin; and, if it was the fault of the administrator that it was not divided, he is liable. But it seems not to have been his fault. The next of kin disputed among themselves, as to who was entitled to it, some claiming all and notified him not to distribute it. And so the administrator kept the money on deposit, without using it, for them and until they could settle their dispute. The administrator has not made a dollar for himself and has been guilty of no negligence by which others have lost. The bank bills having become worthless, and the sale notes insolvent and uncollectable, the proceeds of the sale of the slaves are a total loss, as the slaves would have been.
There is no error in the rulings upon the exceptions appealed from.
Let this be certified, c.
PER CURIAM. Judgment affirmed. *Page 419