W. M. SHIPP, Ex'r., &c., *v.* LOUISA E. HETTRICK.

'The rule of diligence imposed upon Executors and others having trust funds in their hands during the late war,—as regards dealing in Confederate money, is that of a prudent man in managing his own affairs.

.Although one acting as trustee, may not in a particular case have made himself responsible by *receiving* in 1862 or 1863, Confederate money for his cestuy-que-trust, yet if he do not invest it when received, or at least do not make a special deposit of it, or keep the identical money separated from all other, he will be held liable for the value of what he received, with interest.

.(*Cummings* v. *Mebane, ante* 315, cited and approved.)

BILL in equity, set for hearing upon the pleadings and proofs at Fall Term, 1867, of the Court of Equity for RUTHERFORD, and transferred to this Court.

The plaintiff alleged that in 1855 he had qualified as executor of the will of one Whitesides, and that by such will certain legacies of money and other property were given to, amongst others, the defendant, who was then and still remains, an infant without guardian; that he had endeavored to get rid of his obligations as executor towards her, but without success, owing to her condition; that in managing the legacies given to her, he had received in 1862 for property sold, and in 1863 (March 19th,) for a note, a considerable amount of Confederate money, which he had not been able to lend, and therefore had been obliged to retain and had retained, until, by the events of the war, it became worthless; that at the time he received the money it was the universal custom of prudent business men to receive it for such claims; that after it was received he had invested a much larger amount of his own funds in Confederate bonds, with the intention of allowing the defendant, if she chose, to receive payment in them or in currency; and that he had never received any individual benefit from the money so collected for the defendant.

The prayer was that the defendant (and the other legatees,) might come to an account with the plaintiff, &c., and for further relief.

The answer of the defendant put the plaintiff upon proof of his allegations.

Proofs were taken establishing the allegations of the bill; and by a report of a commissioner appointed by the Superior Court to state an account, the plaintiff was exonerated from all liability in respect to the Confederate money received as above. The defendant excepted to the report.

*Bynum* and *Merrimon*, for the plaintiff.

No counsel, *contra*.

SETTLE, J. All the questions presented by the pleadings in this cause, have been disposed of in the case of *Cummings* v. *Mebane*, decided at the present term of this Court.

It is there stated, that the degree of diligence, to which those who undertook to discharge a trust during the war, should be held liable, is that which a prudent man, at that time, would have exercised in the management of his own affairs.

And it is said in the same case, that, in the absence of any suggestion of fraud or negligence, where a party acting in good faith, received Confederate currency, and afterwards lost, not only trust funds, but his own also, he is to be regarded with all the favor consistent with the policy of the law, in regard to those who undertake to discharge a trust.

The plaintiff's bill alleges, and all the proof is to the same effect, that there had been no such depreciation in Confederate currency in 1862 and 1863, the times at which he received it as executor, as prevented it from passing currently; and that it continued to do so, for some time thereafter. While this fact may furnish sufficient justification for receiving Confederate currency, it, at the same time, forbids the idea of holding it from 1863 to 1865, when it was growing worse every day, and finally became worthless, without showing some good reason for so doing, or, at least, such circumstances as would negative the suggestion of negligence. As this kind of money was passing currently for some time after it came it the hands of the plaintiff, it is his misfortune not to have invested it in

some manner, or have set it aside specially for the benefit of the party interested.    He states that he invested his own funds in Confederate bonds, intending to give Louisa E. Hettrick, or the person authorized to act for her, choice between the Confederate money and the bonds; but it is not admissible for a trustee to tender an unfortunate investment of his own, in discharge of a liability incurred in the management of the funds of another.    If the plaintiff had invested this fund in Confederate bonds, or had loaned it out, upon individual security, he would not have been held responsible although the investment may have proved a total loss.    Or if he had separated this money from all other moneys in his hands, and retained it as a special deposit for Louisa E. Hettrick, the case would have been different, notwithstanding the fact that it became worthless.    But he did none of these things; on the contrary he kept it with his own moneys.    And while it may be admitted that he always had on hand an amount sufficient to meet all the demands due Louisa E. Hettrick, there never was such a separation of this particular money from all moneys in his hands, as to make it cease to be his, and become a part her estate.

If he had made a general deposit of this money in bank, in his own name, it could not have relieved him, but if he had made a special deposit of a particular parcel for this particular purpose, it would have been otherwise.

Admitting that the facts in this case make it one of peculiar hardship, we are constrained hold, that the plaintiff must be charged with the value of the Confederate currency, at the time it came into his hands.

To admit that a trustee might in 1862 or 1863, receive Confederate currency, and permit it to become totally worthless on his hands, without showing that he had invested it in some manner, or had made a special deposit of it, for the benefit of the party interested, would open the door so wide, that not only negligence, but fraud also, in its grossest forms, could easily escape.

The report of the commissioner, made to the last term of

this Court, should be reformed, so as to charge the plaintiff, in addition to the items reported against him, with the value of the Confederate money received on the sale of notes in 1862, and also with the value of the Confederate money received in 1863, on the bond of C. L. and J. W. Harris. To this end, there will be a reference to the clerk of this Court, and the cause will stand on further directions.

PER CURIAM.                          Decree accordingly.