THE STATE, *ex. rel.* J. W. CUMMINGS *v* JOHN A. MEBANE.

Guardians and other trustees, who had in their hands for management dur-
ing the late war funds belonging to infants or other *cestuy que trusts* were
bound to use for such persons only that care which prudent men exer-.
cise in relation to their own affairs.

It was not imprudent for a guardian to receive Confederate money in
December 1862, from a debtor of his ward, who tendered it upon *his* being
about to leave. the State; but if such guardian mixed the money so
received with his own, and both amounts were lost at the expiration of the
war, he will be responsible to his ward for its value in the present cur-
rency, with interest from the time of receiving it.

EXCEPTION, to a report, in an action upon a guardian bond,.
allowed by *Cilley, J.*, at Spring term 1868, of the Superior
Court of GUILFORD. .

The report sets forth, that the defendant, Mebane, became
the guardian of Margaret Cummings, J. T. Cummings, and the
relator, D. W. Cummings, at February term 1859, of the Court
of Pleas and Quarter Sessions, for the county of Guilford; and
at the same time, received the sum of four hundred and forty-
four dollars and sixty cents, belonging to the estate of his.
wards. Soon thereafter, he loaned out this money to a solvent:
person, taking good security. In December 1862, the principal
in the bond, " being about to remove from the State," tendered
the amount of the debt to the guardian, in Confederate cur-
rency and he accepted the same. In February 1863, Margaret
Cummings and J. T. Cummings having both arrived at full
age, received their portions, leaving only the amount due the
relator, in the hands of the guardian, who states that he " kept
the same until the act of the Confederate Congress, requiring
all the old issue of Confederate money to be funded, or con-
verted into the new issue, and that in order to prevent loss, he ·
converted the money received into new issue, which he kept.
among his own, and used promiscuously with his own, as he·
could not lend it out, and that upon the expiration of the Con-
federate government, all the money he had, including that due·
his ward, became worthless, and that from the time he received. .

the new issue, up to the day the money became worthless, he had on hand an amount of new issue, more than sufficient to cover the amount due the relator."

The report of the commissioner charges the guardian with the full amount received in December 1862, making no deduction on account of Confederate currency; and also with a small amount for negro hire.

The defendant's counsel filed the following exception, to wit: "The defendant objects to the confirmation of the report of the clerk. He charges the defendant with the whole amount of money in his hands at the expiration of the Confederate government, which money was in his hands, being unable to loan the same, and being compelled by the existing government to receive the new issue, or lose the Confederate money collected in December 1862; against the evidence in the case."

His Honor below sustained the exception, and gave judgment against the plaintiff for costs. Thereupon, the plaintiff appealed.

*Scott & Scott*, for the appellants, cited *Emerson* v. *Mallett*, Phil. Eq. 234, and *Donnell* v. *Donnell*, *Ib.* 148, and commented on the fact that the guardian had mixed the money received, with his own.

No counsel, *contra.*

SETTLE, J. (After stating the case as above.) This case comes before us by appeal from the decision of his Honor below, sustaining the exception of the defendant's counsel to the report of the commissioner, appointed to take and state an account of the guardianship of the defendant Mebane.

The report of the commissioner charges the guardian with the full amount, and the decision of his Honor discharges him of all liability.

Several cases have been before this Court, touching the liability of those who have received Confederate currency in a fiduciary capacity. And while they establish no general rule, but seem to leave every case to stand upon its own merits, still

they afford us much assistance in dealing with this embarrassing question.

We cannot close our eyes upon the past, and forget that thousands of our most prudent citizens have become bankrupt by investments, which appeared to be the very best that could be made at the time.

It is one thing to sit in judgment upon the past, and quite another to foresee consequences. It will not do to look back now, and see how estates might have been better managed, and exact of those who had them in charge, that degree of diligence, which would have proved most beneficial in each particular case.

The degree of diligence to which we think they should be held liable, is that which a prudent man, at that time, would have exercised in the management of his own affairs. And this, we understand, to be the principle upon which all of these cases have turned. Of course, a party who has been guilty of negligence or fraud, should be held to the strictest accountability. But in the absence of any such suggestion, where a party acting in good faith, received Confederate currency, and afterwards lost, not only trust funds, but his own also, he is to be regarded with all the favor that is consistent with the policy of the law, in regard to those who undertake to discharge a trust. In the case before us there is no suggestion of fraud.

Was there such negligence as ought to subject the defendant to the payment of the full amount, received by him, for the relator in December 1862?

We think not.

When we remember that the principal in the bond, was "about to leave the State," in the midst of a war, we can very well imagine that the defendant would be, not only willing, but anxious to collect his debt in a currency, with which he was able to pay off two of his wards in February 1863.

The fact that he did pay them off, with this very money, two months after it came into his hands, shows that it was passing currently, and that no question was raised at that day, either

as to his good faith, or diligence. But it is said, he should have loaned it out. He states, that he could not lend it. Had he done so, it is more than probable, that it would have proved worse for the relator; for he "mixed it with his own, and used it promiscuously," thereby rendering himself liable for its value in December 1862, the time at which he received it.

There was error, in relieving the defendant from all responsibility; and the report of the commissioner should be reformed in the manner indicated by this opinion. This will be certified, &c.

PER CURIAM.                              Ordered accordingly.