JOHN B. COBB and wife and others *v.* W. P. and J. W. TAYLOR, Executors, &c.

Where executors collected the funds of an estate in Confederate money, in 1861, 1862 and up to February 1863, for next of kin living in Tennessee, and the latter received such money without objection until, in the progress of the war, communication was cut off; and thereupon the executors invested it in Confederate *Certificates*, State Treasury notes, and other securities—all of which failed by the results of the war : *Held*, that they had exhibited ordinary care in this respect, and were not responsible for the loss.

(*Shipp* v. *Hettrick*, 63 N. C. 329, cited, distinguished and approved.)

EXCEPTION to an account, tried by *Tourgee, J.,* at Fall Term 1869 of CHATHAM Court.

The plaintiffs, at Spring Term 1867, filed a petition against the defendants, for an account and settlement of the estate of Mary Taylor, deceased. The defendants answered sepa-

Cobb and wife *et al. v.* W. P. and J. W. Taylor, Ex'rs. &c.

rately, and very fully; and an account was taken. The plaintiffs excepted to part of the account, because the commissioner had allowed the defendants certain Confederate money received and invested by them, and subsequently lost by the results of the war.

The material facts upon which this question turned, are to be found in the opinion.

His Honor allowed the exception, and the defendants appealed.

*Phillips & Merrimon* for the appellants.
*Howze, contra.*

Settle, J. There is a marked distinction between this case and that of *Shipp* v. *Hettrick*, 63 N. C. 329. That was said to be a case of peculiar hardship, but the court felt constrained to hold the executor liable for the value of the Confederate currency which came into his hands, upon the ground that no good reason was shown for receiving Confederate currency in 1862 and 1863, and holding it until it became worthless, without investing it in some manner, or making a special deposit of it for the benefit of the party interested. In that case it is said that "if the plaintiff had invested this fund in Confederate'bonds, or had loaned it out upon individual security, he would not have been held responsible, although the investment may have proved a total loss. Or, if he had separated this money from all other moneys in his hands, and retained it as a special·deposit for Louisa E. Hettrick, the case would have been different, notwithstanding the fact that it became worthless. But he did none of these things; on the contrary he kept it with his own moneys."

In the case before us, the executors state in their answers, that they received and paid over to the different legatees, residing both in this State and Tennessee, Confederate currency, without objection on their part, until they extin-

guished the claims of all the legatees except the plaintiffs in this petition; that they had made partial payments to these, and had in the latter part of 1862, and on and before the 10th day of February 1863, collected Confederate currency with a view of sending it to the petitioners, who reside in Tennessee ; that, in consequence of all communication being cut off, they were unable to send the fund, as they wished and intended to do; that, finding Confederate currency rapidly depreciating, they invested all in their hands belonging to the estate of their testator, except a small sum which they still hold, in certain securities (State Treasury notes, Confederate Certificates of Deposit, and others), *for the benefit of the petitioners;* that not knowing when they would be called on to account, or when they would find an opportunity to transmit the securities, they kept them constantly on hand, ready at any moment to turn them over to the petitioners. They allege, in short, that they received the currency in good faith, expecting to pay it over at an early day to the petitioners, who were clamorous for their shares. Finding themselves unable to do so, they invested in certain securities for the benefit of the petitioners, and retained the same until they became worthless by the results of the war. The report of the Commissioners appointed to audit and settle their accounts, sets forth each investment and the date thereof, and adds: "We are satisfied from the testimony taken by us, that the executors received most of the funds invested as aforesaid, in 1861 and 1862, and none after February 1863: That their investments were made promptly for the benefit of the heirs not in this State, the communication being very difficult and dangerous between this State and the parts of Tennessee in which they resided."

There is nothing to support the exception taken by the plaintiffs. The answers of the executors are fully sustained by the report of the Commissioners, and we see nothing to impeach either.

There is error. This will be certified, to the end that the

funds in the hands of the executors may be disposed of under an order of the Superior Court.

PER CURIAM.　　　　　　　　　　　　　　　Error.