THE STATE *ex rel.* ANNA M. WHITE *v.* THOMAS H. ROBINSON, Adm'r, &c.

A guardian of an infant (some fifteen years of age) obtained judgment in her favor in July 1861, against parties who were, and remained until the Surrender, amply! solvent—by his direction no execution was issued upon such judgment during the war, and until his death, in March 1866; the administrator of the guardian commenced an action upon the judgment in October 1866; and before he obtained judgment therein, the defendants sold out their property, removed from the State, and were found to be insolvent: *Held,* that neither the guardian nor his administrator were chargeable with negligence in managing the debt due to the ward.

Guardians are not responsible for losses to their wards attributable to their not having resorted to new and extraordinary remedies the force and effect of which are doubtful.

(*Parker* v. *Shannonhouse,* Phil. 209; *Bunting* v. *Wright, Ib.* 295; *Cummings* v. *Mebane,* 63 N. C. 315; *Shipp* v. *Hettrick, Ib.* 329, and *Carr* v. *Fearington, Ib.* 560, approved.)

Exceptions to a report, tried before *Logan, J.,* at Spring Term 1870 of Cabarrus Court.

The facts are stated in the Opinion.

The Commissioners had reported, charging the defendant with the loss; and the Judge overruled his exception to the report.

The defendant appealed.

STATE *ex rel.* WHITE *v.* ROBINSON, Adm'r. &c.

*Wilson,* for the appellant.
*Dowd, contra.*

DICK, J.   The rules of law laid down in the cases of *Cummings* v. *Mebane,* 63 N. C. 315, and *Shipp* v. *Hettrick, Ib.* 329, govern this case.   In the administration of justice, this Court feels constrained to take judicial notice of the anomalous condition of things which existed during the late war and the transition period which preceded the adoption of our present State government.

In 1861 the rightful government of this State was subverted by a government of paramount force.   In the constant changes of revolution, the well established laws of trade commerce and finance were so much deranged that prudence experience and wisdom furnished no certain guide in business transactions, and afforded no safe guards against unfortunate investments.   An intolerant public opinion, and the fear of military authority, often controlled the action of the most cautious and prudent men.   Stay laws prevented the enforcement of contracts in the Courts, and a wild spirit of speculation, and the rapid depreciation of the currency unsettled the value of property.   No one could tell what a day or an hour might bring forth.

For some time after the termination of hostilities, there were no regular system of Courts with certain and well defined jurisdictions.   The failure of the banks, the repudiation of State securities, and the emancipation of the slave property of the country, produced wide-spread individual insolvency.   The various policies of reconstruction which were proposed for the settlement of existing disorders, were undergoing constant change, and the civil functions of the State were subordinated to military power.   It would be unjust and even oppressive to apply to the business transactions of such a period the same strict accountability for prudence and

diligence, which are proper in times of peace and prosperity, and well established civil government. The suspension of the statute of limitations, and the enactment of various remedial statutes, clearly indicate the opinion of the Legislature upon this important and difficult subject.

In the case before us, there was no intimation of a want of good faith on the part of the intestate of the defendant, and so far as he is concerned, the only question for us to determine is, whether he managed the trust funds in his hands with due care and reasonable diligence. In July 1861 he obtained a judgment for the funds of his wards against several parties who were amply solvent and remained so during the war. He directed the Clerk not to issue an execution to collect the money, but received in part payment several amounts, as he had an opportunity of handing over the money to the parties entitled. He did not collect the amount due the present plaintiff, as she was a minor, (coming of age in 1867,) and he would have to reinvest the money, and might not have been able to have the fund as well secured again. If an execution had been issued in July 1861, the Stay-law of the 11th of September 1861, would have retarded its progress, and it would have been satisfied in a depreciated currency, which could not have been safely invested. The defendants in the judgment remained amply solvent, even after the emancipation of their slaves, and as there were no Courts in 1865, the intestate had not-the opportunity of reviving the judgment, and collecting the debts before his death, which occurred in March 1866. We think the intestate acted wisely in not collecting the guardian bonds in Confederate money, and we can see no laches on his part which ought to subject his estate to the payment of the claim of the plaintiff.

The defendant qualified as administrator in the Spring of 1866, and the fund which his intestate held as trustee de-

volved upon him.   He was by law, clothed with the same ·character of trustee of the fund, and he succeeded to the same obligations.   He was bound to perform the trust in good faith, and with reasonable diligence, until he was re- lieved from the fund, by delivering it to some person who was entitled in law to receive it : *Trevithick* v. *Austin,* 4 Mason, 16.   If the defendant, as administrator, had failed to do his duty, the estate of the intestate would, in the first place, have been liable for the loss of the trust fund,  but the next of kin could  have recovered the amount from the adminis- trator, for his neglect of duty.

It appears that the defendant sued out a writ to renew said judgment, returnable to the first Term of the Superior Court after his qualification as administrator.   The jurisdic tion of the County Courts in such cases, had been taken away by the act of 1866, ch. 16.   The defendant adopted the only remedy he had at law,  for reviving and enforcing the said judgment, as the Ordinance of June 1866 suspended the remedy by *scire facias: Parker* v. *Shannonhouse,* Phil. 109. The failure of the defendant to demand bail upon the service of his writ, did not prejudice the rights of the plaintiff, as the act of 1866–'67, ch. 63, sec. 1, abolishing imprisonment for debt,  would  have released the bail:  *Bunting* v. *Wright,* Phil. 295.   The same result might have followed if an origi- nal attachment had been sued out, as the parties could have given bail upon this process.

It was further insisted that the defendant might have secured the fund belonging to the plaintiff, by filing a bill in equity against two of the parties to the judgment who are insolvent, and who left the State in November or December, 1866 after disposing of a considerable amount of real and other estate, under the provisions of the Ordinance of June 23d, 1866, sec. 18.   This was a new and unusual remedy, and the Ordinance, in all probability, was not published for

several months after the adjournment of the Convention, and the force and effect of such proceedings in equity, as a lien upon land, was not determined until the decision of the case of *Carr* v. *Fearington*, 63 N. C., 560.

The defendant promptly and diligently pursued his remedy according to the ordinary course of the Courts, and considering the circumstances of the times, we think it would be a harsh administration of the law to subject him to loss for not resorting to a new and extraordinary remedy, which, at the time, could not have been generally known and adopted.

There was error in the ruling of his Honor. The defendant's exceptions are sustained, and this must be certified, to the end that the report may be reformed.

PER CURIAM.                                                        Error.