J. N. HARSHAW *et al.*, Ex'rs., &c. *vs.* JOHN DOBSON.

Where the presiding Judge of a Superior Court, at one of its Terms in the Fall of 1863, made a violent charge to the grand jury, upon the subject of *Confederate money in payment of debts*, in which he said, among other things, that a refusal to receive such money was an indictable offence, and threatened to punish all who so refused; and where he procured a presentment to be made by the grand jury against a judgment creditor, who refused to take Confederate currency in payment of a judgment rendered in 1858, upon a bond given for land, and payable in specie, and furthermore, threatened said creditor that if he did not receive such currency he would send him to jail, or to Richmond, Va.; and the creditor, under fear, being an infirm old man, did receive such currency in payment of his judgment, and did execute and deliver a deed for the land, which he had contracted to sell;

*Held*, That the receipt of the Confederate currency, under such circumstances, was under duress, and was not a payment or the judgment further than the value of such currency, and that the land conveyed should be considered a security for the purchase money.

A judgment debtor who pays a debt and receives a deed under such circumstances of intimidation and duress, although he did not procure them to be brought about, cannot avail himself of such an advantage to perpetrate an unconscientious act.

CIVIL ACTION, tried before *Mitchell, J.*, at Spring Term, 1872, of the Superior Court of CATAWBA.

This case was before the Court at January Term, 1870, upon the complaint and demurrer filed. The demurrer was overruled, and, by agreement of parties, the defendant was allowed to answer. His answer was filed; issues of fact, under the direction of the Court, were submitted to a jury, and several witnesses were examined.

The material parts of the complaint and answer, the issues, and the facts proved, are stated in the opinion of the Court.

Plaintiff moved for judgment on the fourth issue, which, with the response of the jury, is as follows:

"Did Harshaw receive Confederate money in payment of said judgment, under fear and duress, and against his will?"

Response of jury. "He did."

His Honor refused plaintiff's prayer for judgment, and gave judgment for the defendant, from which plaintiff appealed to the Supreme Court.

*Bynum* and *Folk*, for plaintiffs.

No counsel for defendant.

READE, J. This case was before us at January Term, 1870, reported in 64 N. C. R. 384. It stood then upon demurrer to the complaint, upon the ground that the facts set out did not constitute duress.

The demurrer was overruled, and judgment would have been rendered then for the plaintiff, but for the fact that it was agreed of record by the parties that, if the demurrer should be overruled, there should not be judgment for the plaintiff, but the defendant should answer and the case should stand upon proofs. It is now before us, not in the usual form, and, on that account, the delicate questions involved are the more embarrassing. There are no exceptions to evidence received, nor to evidence ruled out; no instructions asked for, nor objections to instructions given. Indeed, it does not appear that any instructions were given at all; but the complaint, answer, issues, verdict, testimony of witnesses, and the judgment of the Court, are sent up as the "case" for this Court.

The complaint is, that in 1850, the plaintiffs' testator, Jacob Harshaw, sold to the defendant a tract of land, at $5,000, and took the defendant's bond for the price, and gave the defendant penal bond in $10,000, to make title when the money should be paid. There was a balance due upon the defendant's bond when the war commenced. Harshaw had sued upon the bond before the war, and obtained judgment in Burke Superior Court. After the war commenced and Confederate money was

in circulation at a depreciation, Harshaw gave the Clerk of the Court directions not to issue execution, and not to receive Confederate money. At Fall Term of Burke Superior Court, there being much excitement in the public mind about Confederate money, and prejudice against those who refused it, the Judge who held the Court charged the Grand Jury, "that it was an indictable offence for a citizen of the Confederate States to refuse to receive its money in payment of debts; and that, from his place on the bench, said Judge threatened with punishment and imprisonment, in the County jail, or in some prison of said Government, such person who should dare to refuse said money in payment as aforesaid." That during the term of the Court the defendant, by his counsel, moved "to be allowed to pay off and satisfy said judgment in Confederate money. And the Court allowed the motion, and directed said payment to be entered of record in said Court, as a satisfaction of said judgment." That Harshaw, by his counsel, protested against the payment before the Court. That the Judge, during the term, "sent word to Harshaw that it was his fixed purpose, in case he did not receive Confederate money in payment of said judgment, to cause him to be sent to Richmond." "That on receipt of said message, being infirm in bodily health, and well stricken in years, the said Harshaw, knowing the fanatical character of said Judge, and believing that such was his purpose, and under terror and fear of his life," received the money. It is also stated, that Harshaw had, before that, refused to receive Confederate money from the defendant, and that the defendant continued to procure the threats of the Judge, and well knew of the terror excited thereby, and took advantage of it to pay off the debt in depreciated currency.

The answer denies that the defendant had before tendered Confederate money to Harshaw, and had been refused; or that he procured the charge or threats of the Judge, or that Harshaw received the money unwillingly, or under duress, or that he was in any danger.

1. The first issue was, Did Jacob Harshaw refuse to take Confederate money in payment of the judgment?

To this the jury respond, "He did, but after consultation with his counsel received it."

2. Did Harshaw give notice to the clerk, not to receive any other money except gold or silver coin in payment of said judgment?

To this the jury respond, "He did."

3. Did Harshaw receive Confederate money in payment of said judgment voluntarily and of his own consent?

To this the jury respond, "No."

4. Did Harshaw receive Confederate money in payment of said judgment under fear and duress, and against his will?

To this the jury respond, "He did."

Taken in connection with the complaint and answer, the question is, Do these findings by the jury, make out a case of payment under duress? Clearly they do. They make out a case of judicial tyranny as monstrous as, we are glad to say, it is rare. We have looked into the testimony, not for the purpose of controlling the case thereby, but to see whether the case was not overstated in the complaint, and in the finding of the jury; but it is manifest that the facts go even beyond the complaint. From uncontradicted testimony, it appears that the judge not only did charge the grand jury to present every man who refused Confederate money, but that he went into the grand jury room with a presentment prepared against Harshaw, and directed the grand jurors to sign it, and send it into Court by the foreman; that he took the presentment in an envelope to the clerk, and directed him to send it to the authorities. He was seen "writing a *mittimus* to send Harshaw to jail," and when remonstrated with, "that Harshaw was an old man and it was a pity to send him to prison" he sent the witness to Harshaw and said, "Go to Harshaw and tell him, if he dont take Dobson's money, I will put him in

jail." And there was much more behaviour to the same effect, which it seems not only put Harshaw in fear of his life, and excited the community, so that according to one witness, "it was in every body's mouth," "and the sentiment was that the people must take it or be punished." And it would seem that even the bar were appalled, and made no protest against it; and even Harshaw's own counsel, after going to see the judge, came back and told his client, that "he had better take it."

But supposing all this to be true, that Harshaw did receive the money under duress, still the defendant says he is not affected by the duress; because he did not procure or cause it. And it is true, that, in response to issue 5 :

5. "Was the said payment in Confederate money forced upon Harshaw by fraud and circumvention of the defendant?"

The jury respond, "No, it was not."

And the question is, how does that finding affect the case? It must be remembered that the jury, upon prior issues, found that Harshaw had not only refused to receive Confederate money of the defendant, but had instructed the clerk not to receive it. Aside from the question of duress, therefore, the defendant had no right to pay Confederate money to the clerk, because the clerk had no right to receive it. Harshaw might have refused to receive the money of the clerk, and then, the payment would have amounted to nothing. And, although he received the money of the clerk, yet, that did not amount to a ratification of the payment; because, he received it under duress. But, furthermore, although the defendant did not instigate the duress; yet, he took advantage of it, to perpetrate an unconsientious act, upon an infirm old man; and it is the same as if he had instigated it.

It is further said by the defendant that, whatever may have been the effect of what was done about his payment of the money to Harshaw, it was all cured by the fact that, some time

afterwards, the said Harshaw voluntarily made him a deed to the land ; and such is the finding of the jury upon the 6th issue. But then, it must be remembered that Harshaw was under a penal bond of $10,000, to make the deed when the money was paid ; and the acceptance of the deed, under the circumstances, was but a continuation of the advantage which the defendant had obtained ; and, in a Court of conscience, it cannot be allowed to avail him. And, again, it cannot avail him, because it does not affect the question as to whether the debt was paid, but only the question as to whether the land ought to be held liable as a security for the debt. And we think that, very clearly, it ought to be held as security for the debt, notwithstanding the deed from Harshaw to the defendant.

In view of the fraud and duress which was practiced upon Harshaw, we have considered, whether the defendant is entitled, as a credit upon the judgment, to the *value* of the Confederate money which he paid. And we incline to the opinion that the plaintiff would have been entitled to an issue, as to whether Harshaw had used the money to profit, and if he had not, he would not be liable to account for it ; but it appears, that the plaintiff moved for judgment, only for the balance due him upon his judgment, after deducting the value of the Confederate money paid, fixing the value by the legislative scale.

We are of the opinion that his Honor erred, in refusing the plaintiff judgment according to his prayer. And it is considered that judgment be entered here, as it ought to have been entered below, for the balance due, $3,300, as of 1st December, 1862, with interest from that time, subject to a deduction of the amount of the *value* of the Confederate money paid at that time, according to the legislative scale, with interest thereon, as to which there will be a reference to the Clerk here. It is also considered, that the land mentioned in the pleading is a security for the satisfaction of the judgment ; and that if the money is not paid, or if the execution which

may issue shall be returned not satisfied, the defendant shall surrender the deed to be cancelled, and such further proceedings shall be had as may be necessary, to subject the land to sale for the satisfaction of the judgment in this Court.

There is error.

PER CURIAM.                               Judgment reversed.