E. P. COVINGTON, Guardian, *vs.* LEAK & WALL, Ex'rs., an d others

The highest degree of good faith is exacted of a guardian, but only or dinary diligence, certainly not infallible judgment.

Therefore, where a judgment was rendered in favor of a guardian in 1863, and he refused to receive Confederate money in payment thereof, and omitted the collection of the same during the war, and even up to the time of his death in 1868; *it was held*, that under the peculiar cir cumstances of the country he was not guilty of such negligence as to charge his estate. *It was further held*, that, considering the circumstances, in connexion with the fact that the sureties on the administraon bond were solvent, and still continue apparently so, he was not guilty of negligence in omitting to sue them.

Appeal from a judgment rendered by *Buxton, J.*, at Spring Term, 1872, of RICHMOND Superior Court.

This was a special proceeding instituted by plaintiffs against the defendants, as executors of Mial Wall decd. A reference was had and report made by the Clerk, exceptions were filed and passed upon, and an appeal taken to the Supreme Court at June Term, 1871. At that Term the exceptions were debated and the cause remanded, in order that matters connected with the first exception might be enquired into. In addition to the facts stated in the reported case, 65 N. C. R., the Judge found these additional facts, viz: "That James A. Covington qualified as administrator of John P. Covington, dec'd, father of the plaintiffs, Bascombe, John P., and Virginia Covington in 1857, and entered into bond in the sum of $30,000 with W. L. Covington, J. W. Leak and B. B. McKenzie, as sureties, which bond was then sufficient and solvent, and is now solvent for an amount greater than the amount reported in favor of Mial Wall, guardian of the minor children, in October 1863, viz: $3,830.-63, that at October Term, 1863, of the County Court of Richmond, the report of the commissioners to audit and settle the accounts of J. A. Covington dec'd, was in all things con-

firmed, and ordered to be recorded. Upon this finding the Judge entered this judgment, viz: "These facts taken in connection with the facts heretofore found by the Court in reference to said exception No. 1, satisfy the Court that said exception ought to be overruled and it is so overruled, and the estate of Mial Wall charged with the item embraced therein, $3,-830.63, with compound interest from 20th October, 1863, in National currency." Defendants appealed.

*J. D. Shaw*, for the plaintiffs.
*Smith & Strong*, for the defendants.

RODMAN, J. After the decision made in this Court at June Term, 1871, (65, N. C. 594,) the Judge below referred it to the Clerk of his Court, to take testimony and report on the facts connected with exception No. 1. Whatever the referee did beyond this order was unauthorized, and was properly disregarded by the Judge.

The only question, which we conceive to be presented by the present appeal, is, as to the charge against the executors of Mial Wall, of the amount of the judgment recovered by him as guardian of the infant plaintiffs against the administrator of John P. Covington, in Richmond County Court, in October, 1863.

We agree with his Honor that the merits of this judgment cannot be inquired into, unless it be alleged and shown to have been procured by fraud and collusion between the parties to it.

Was Wall guilty of such negligence as to charge his estate, in omitting to make any effort to collect that judgment prior to his death in the Spring of 1868?

We think that under the circumstances he was not. Certainly, his refusal to receive Confederate currency in 1863 cannot be so considered. Neither can his omission to enforce the

judgment up to the close of the war, or until the Courts were opened again, at, or about the end of 1865.

The delay from this period only remains to be considered.

It is common knowledge, (in which we must be allowed to participate,) that at the close of the war, there was very little national currency in the State, and that it could only be grad·ually increased by the sale of our productions or property at the North. If summary judgments and executions could have been obtained against all debtors, the money could not have been made out of their property, except at a loss to both debtor and creditor, if at all. Besides this, there were embar·rassments in the collection of debts, arising from military orders and stay laws, and if the guardian had collected the money during the two years before his death, he would have been troubled where to invest it in safety, when the standing of most men was uncertain, and as Lord Bacon says of England after the passage of the statute of uses, "men's estates were like barks on a stormy sea, and it was doubtful which would get safe to shore." Considering these circumstances, in connec·tion with the fact that the sureties to the administration bond were, and still continue, at least apparently solvent, we cannot say that the guardian was guilty of culpable negligence in omitting to sue them. But it is said that, admitting that the principal is safe, by the delay of the guardian to collect, the wards will receive only simple, instead of compound interest, to which they are entitled.

There may be a loss to the wards in this respect. Occasion·al losses are inevitable, even to the most diligent. Every loss does not carry with it a presumption of culpability. The highest degree of good faith is exacted of a guardian, but only ordinary diligence, and certainly not infallible judgment. In difficult circumstances, when there is no reasonable suspicion of his good faith, and when, so far as appears, he has acted hon·estly according to his judgment in the emergency, the law re-

quires no more.   No one would become a trustee if the law were otherwise ; if his conduct, instead of being judged by the lights before him at the time, was to be scrutinized by the light of subsequent events.   Such a rule would require not only the utmost of human diligence, but prophetic foresight.   The circumstances here are not such as those in *Whitford* v. *Foy*, where the guardian was charged with the difference between simple and compound interest.

If it be necessary, the infants by their guardian can prosecute the action upon the administration bond of James A. Covington, and can, if necessary, use the names of the executors of Mial Wall, upon giving an indemnity against costs.

We think the Judge erred in his decision on this exception. His judgment is reversed, with costs in this Court against the appellee, and the case is remanded to be proceeded in according to law.

Let this be certified.

PER CURIAM.                          Judgment reversed.