RODMAN, J., dissentiente.
The plaintiffs, as next of kin and distributees of one Michael Keener, brings this suit against the defendants, his administrators, for an account and settlement. The complaint and answer are filed at Spring Term, 1870; at Fall Term, 1870, it is referred to the Clerk to take and account, who, after taking testimony, returns his report to Fall Term, 1871. At Spring Term, 1873, the plaintiffs file ten exceptions to the report of the Clerk, the second of which, being sustained by his Honor on the hearing, and being the only one considered in this Court, is fully stated in the opinion of the CHIEF JUSTICE.
Upon the exceptions filed, the Judge below, at Fall Term, 1873, gave the following judgment:
The whole matter being fully considered, etc., the Court doth find, as to the second exception of plaintiffs, the facts to be: 1st. That defendant did not attempt to collect the Baxter note until the Fall of 1862, more than eighteen months after it fell due.2d. That the defendants, by their own orders and acts, caused a levy of execution not to be made until 1866, about three years after the judgment, and then the execution was directed to one of the defendants in the execution, and by him levied as set out in the record; and then, not kept up and perfected as a lien on the lands of the defendants in the execution, so as to secure the debt; and 3d. That the defendants, when they made the settlement of 27th September, 1863, accounted for the Baxter debt, and undertook to pay off all the distributees in Confederate money, in full, and retain the said note to themselves; and actually did pay off, tender, or file away Confederate money for said distributees to the full amount of the estate, the Baxter note (37) included. *Page 42 
Wherefore, the Court doth declare, that the defendants have not used proper and due diligence in endeavoring to secure and collect the Baxter debt, and are chargeable with the amount of said debt and interest. The second exception is therefore sustained.
The Clerk will reform his report in accordance with this opinion, and report the amount due to each of the distributees of the estate, out of the sum charged to the administrators as above, to wit; the amount of the Baxter debt and interest being $2,175 and interest from 21st of February, 1861; and judgment is rendered against defendants therefor.
As the report will be modified and reformed, it is not necessary to pass upon the other exceptions of the plaintiff, except as to those of the plaintiffs who have not been paid in full, and those for whom defendants set aside Confederate money, as the report sets forth. As to these, the exceptions consistent with this opinion are sustained, and the others are overruled. The opinion of the Court is, that this Baxter fund shall be applied in the pro rata payment of the distributive share, which are unpaid, wholly or in part.
The defendants appealed from the foregoing judgment, for
1. His Honor erred in not overruling the exceptions.
2. He erred in holding that defendants were responsible for all the Baxter note.
3. In holding that defendants were responsible for any of it.
4. His Honor ruled erroneously on the facts found, and erred in the finding of the facts.
At the time at which the plaintiffs excepted to the report of the Clerk, they also demanded a trial by jury as to certain issues, one of which was to the degree and nature of the diligence used by defendants in collecting the said Baxter debt.
(38) The Court erred in holding the defendants responsible for any part of the Baxter note.
This note was given at administrators sale, for negroes, and was due in 1861. The defendants placed it in the hands of the Hon. Wm. Lander for collection in February, 1862.
There was no negligence in not sueing on the note in 1861. No trial could be had on any debt during that year. See stay law No. 1, 11th May, 1861, acts 1st extra session 1861, p. 105; stay law No. 2, passed 11th September, 1861, after first stay law was declared unconstitutional, inBarnes v. Barnes. See acts of 1861, 1862, 1863, and 1864, p. 5. *Page 43 
If defendant had sued to Spring Term, 1862, he could not have obtained judgment until Fall Term, 1863, under these stay laws, as will be seen by examination, and at this term we obtained judgment.
Section 20 of the stay law No. 2 extends the time for administrators tosettle to four years showing, that they were not expected to collect; the purpose of these laws being to prevent collections. See Barnes v. Barnes;Jacobs v. Smallwood.
No negligence for not collecting from 1863 to 1865, when the war closed. Nothing but Confederate money could have been collected, and administrator ought not to have taken that on a solvent ante-war note, when the next of kin were refusing to receive it, and it was so badly depreciated. Gibbs v.Gibbs, 61 N.C. 471; Cumming v. Mebane, 63 N.C. 317; Keener v. Wallace,64 N.C. 189; White v. Robeson, 64 N.C. 698; Covington v. Wall, 67 N.C. 363;Love v. Logan, 69 N.C. 70.
In November, 1863, the County Court settled with the defendant, and included and charged the defendants with the Baxter note. Defendant then settled in full with eight or nine of the heirs, paying them for their part of the Baxter note, as chargeable in the settlement, and deposited Confederate money for the others, thereby trying to save the share for the heirs either in Confederate notes or in the Baxter judgment, whichever might survive the results of the war. The deposits were lost, and if he had collected the Baxter judgment (39) it would have been lost; the heirs would have gained nothing by collecting Confederate money in 1863-64.
No negligence after the war:
Defendants levied the execution, which issued on the Baxter judgment, onBaxter's land who was principal in the note on 17th August, 1866, in pursuance of stay law 10th of March, 1866, Sec. 3, acts 1865-66, Ch. 16, p. 22. No sale could then be made under that stay law.
The property was sufficient. The clerk finds in his report it wassufficient and the Judge does not overrule it and there is no appeal by plaintiff. So this is a fact in the case.
From August 1866 to 10th April 1867, when Gen. Sickles' Order No. 10 issued, the stay law prevented sale.
From 10th April 1867 to July 1869, Order No. 10 forbid any action on debts or judgments for negroes. See the order in 64 N.C. p. 104.
There was no sale "by order of D. Schenck, plaintiff's attorney," March 1869, the first ven. ex. after civil government was restored. This order was given because of the ruling in "Mardre v. Fulton, 61 N.C. 283." The levy had been suspended "a year and a day" by Gen. Sickles' order and notice was required to be given before sale, which *Page 44 
Finger immediately issued and on its return got an order for sale.
The Baxter land was sold by the United States for taxes accrued in 1866, and sold in 1869 before we could sell legally. We sold as soon as we could but there being a conflict with the United States authorities it brought only a nominal price and Finger purchased it, and in his answer tenders it to plaintiff — he bought it to secure all he could.
Defendants followed all the parties in the judgment, sold their reversions, proved against bankrupts and did all he could to get the money.
It is submitted that certainly no mala fides is proven and none even alleged, and he has used more than ordinary diligence. (40) Covington v. Leak, 67 N.C. 363, Kerns v. Wallace, 64 N.C. 189.
But it is said he was guilty of gross negligence because his executions were issued to Lawrence, Sheriff, who was a defendant in the execution.
It is submitted that Mr. Finger, not being a lawyer himself, was bound to rely on his counsel for the collection and to see that the writs were in proper form and cannot be held responsible for the error or mistake of his attorney. Deberny v. Ivey, 55 N.C. 375.
No advantage was ever taken of this by the defendants in the judgment, not does it appear that the debt was lost thereby, but the whole testimony shows it was lost by the results of the war.
His Honor erred in charging us with all the Baxter judgment. We had in Nov. 1863, when the settlement was made, accounted in full to eleven heirs, including their part of the Baxter judgment, and in any event only those who did not receive their parts of it can now receive said parts, which would be about seven-elevenths of it. But we cannot see under the liberal and benignant rulings of this Court, how this defendant who has honestly tried to do his duty, can be crushed by holding him for this note.
1. Baxter note. Given by Baxter, Homerly, Falls, Lawrence and Stamey 21st August, 1860, and due 21st February 1861.
It is the duty of administrator to collect when due. The note was due 21st February, 1861, but no effort to collect was made till Fall, 1862,over eighteen months after note fell due. This is the first negligence.
2. Judgment was obtained 3d November, 1863, and execution issued by clerk, returnable to December Term, 1863, when the plaintiff
ordered it not to be collected. Second negligence.
(41) 3. Next execution to May 1864, when it is returned "not collected by order of plaintiff." Third negligence. *Page 45 
4. Next execution to January 1865, and return "not collected by order of plaintiff." Fourth negligence.
5. Next execution to May 1866, when the return is, "levied on 144 acres by consent of Baxter," and this by the sheriff who was a defendant in the execution.
It appears from the record filed, that all the above executions were issued to Lincoln and to the sheriff who was a defendant in execution and who had no right to levy on his own land or to act at all on an execution against him and other jointly. This is inexcusable negligence and even seems fraudulent. Bowen v. Jones, 35 N.C. 25.
6. No execution issued to Cleveland at all, where Homerly and Falls resided and had large estates and were entirely solvent to 1869. Fifth
negligence.
7. From 1866, May, to 1869 — three years. No execution or ven, ex. issued at all, and in 1869, a ven. ex. issued and a fi. fa. which was levied by King, the new sheriff, and the first one authorised to levy at all, upon 118 acres of land belonging to the old sheriff, Lawrence, and the land of Jos. Stamey, and no sale by order of plaintiff's attorney. Homestead law was passed now and the levy was too late, and both took shelter behind it. Sixth negligence.
It being well settled that a defendant in an execution cannot act upon it when issued to him, and in fact is void and of no efficacy whatever, it follows that no legal execution was issued and no legal levy made till King made it in 1869, six years after judgment, and in the meantime all the defendants fail. It was the duty of the plaintiff to issue execution to thecorner, as the law prescribes. 2 N.C. 422, (487;) Bat Dig. 1,088; Collinsv. McLeod, 30 N.C. 221; Rev. Code, Chap. 31, Sec. 55. Sheriffs only to execute process legally issued to them. Seventh negligence.
8. Gen. Sickles' order issued 11th of April, 1867, four years after the judgment, and therefore has no application here, and no stay law forbids a levy, and they have no application. (42) See General Order No. 10, 64 N.C. 104; Stay laws, 1861, '62, '63, '64, '65, '66.
9. The evidence shows that the defendants regarded and treated the Baxter note as cash, and they accordingly paid to several of the distributes their pro rata share of this debt.
10. But the evidence discloses the purposes of defendants in not
collecting the Baxter note. Finger testifies that he, the defendant Finger, proposed to pay David Shrum and Margaret Carpenter, or go in and pay off the lien in Confederate money, and hold the Baxter note. *Page 46 
In May 1870, the Baxter land was sold by the sheriff and David Finger, the defendant, purchased at $15.00. So whatever interest was levied on is now in the defendant; if it is worth the debt he has it and is safe; if it is not, as we allege, then he is guilty of negligence in not turning enough property levied on to make the debt secure and in not keeping up the lien after it was created. Shall the plaintiffs take $15.00 in lieu of the Baxter judgment? The defendant has not conveyed or offered to convey to the plaintiffs the Baxter land so purchased, even if they could take it and a good title be made. Defendant had it levied on for the debt and has sold it for the debt and now owns it for the debt. By his negligence he made it his own and is chargeable under that debt.
On the facts found by his Honor, we do not concur in the legal inference, "That the defendants have not used proper and due diligence in endeavoring to receive and collect the `Baxter debt,' and are chargeable with the amount of said debt and interest." The case was made up and argued before us on the assumption that this Court had jurisdiction, — upon exceptions filed to an account, to go into all of the evidence and review his Honor's finding in regard to the facts, as well as in regard to legal inferences. We are of opinion that the Constitution does not confer such jurisdiction upon this Court; on the contrary, we are of opinion that it is expressly prohibited. (43) In Heilig v. Stokes, 63 N.C. 612, a distinction is taken between "questions of fact" on a motion for an injunction and "issues of fact," which are conclusive of the case. In Klutz. v. McKenzie,65 N.C. 102, it is decided, that upon exceptions to the report of a referee, stating an account, this Court cannot review the finding in the Court below upon the "issues of fact" made by the exceptions. InClegg v. Soapstone Company, 67 N.C. 302, it is decided, that upon a motion to vacate a judgment this Court cannot review the finding of his Honor in the Court below upon the facts. So in Powell v. Weith,68 N.C. 342, Hudgins v. White, 65 N.C. 393. We consider this matter settled by the plain words of the Constitution: "The Supreme Court shall have jurisdiction to review upon appeal any decision of the Courts below upon any matter of law or legal inference, but noissue of fact shall be tried before this Court. Art. IV. Sec. 11." InFoushee v. Thompson, 67 N.C. 453, Justice RODMAN makes the suggestion, that to allow the finding of the Judge below as to issues of fact, to be conclusive, and not to be the subject of review, confers upon one man a vast and dangerous power. That may be so, and perhaps the danger is guarded against by another clause in the *Page 47 
Constitution which, by plain implication, gives to either party the right to have all issues of fact tried by a jury: "In all issues of fact joined in any Court the parties may waive the right to have the same determined by a jury, in which case the finding of the Judge upon the facts shall have the force and effect of a verdict of a jury."Art. IV. Sec. 18. If "issues of fact" made by exceptions to the report of a referee, in stating an account, and the finding of the Judge thereon cannot be reviewed in this Court, which we consider settled, it would seem that such issues, when eliminated by an exception to the report, may be tried by a jury, unless the parties waive the right to have the issue tried by a jury. The remarks made by me in Klutz v. McKenzie, as to the objections to a jury trial, in the old "action of account," and my intimation that the parties were not entitled to a trial by jury, were made on consideration of (44)C. C. P., and without advertence to the power of the Constitution,Art. IV. Sec. 18, and it stands as an open question. But, however this may be, the words of the Constitution are too plain to admit of discussion or to be refined away by construction. It is ours to interpret the law, not to make it. The manifest purpose of the Constitution is to take from the Supreme Court, as constituted under the new system, the jurisdiction which it had under the old order of things, to try all equity cases, both law and fact, upon appeal or by transfer from the Superior Courts. Whether the issues of fact are tried by the Judge in the Court below, or by the jury, this Court is expressly prohibited from trying issues of fact, whether made by the pleadings as at law under the old system of pleading, or eliminated from the complaint and answer, by the Court directly, or by means of exceptions to an account, as at equity, under the old system of equity procedure. Taking this to be settled, we confine ourselves to the facts found by his Honor and to his legal inference therefrom, and do not feel at liberty to look into the evidence, which, without answering any useful purpose, encumbers the papers in this case, and will add a large amount of unnecessary costs.
His Honor finds the facts to be: 1st. "That the defendants did not attempt to collect the Baxter note until the Fall of 1862, more than eighteen months after it fell due." Taking this to be so, it does not warrant the legal inference of a want of due diligence on the part of the defendants, without a finding of the further fact, that the obligors were men in failing circumstances, so as to call for active diligence in the collection, or that the condition of the estate required an immediate collection of this note in order to pay off pressing demands and to save costs." 2d. "That the defendants, by their own orders and acts, caused *Page 48 
a levy of execution, not to be made until 1866, about three years after judgment, and then the execution was directed to one of the defendants in the execution, and by him as set forth in the record hereto annexed, and then not kept up and perfected as a lien on the (45) lands of defendants in the execution, so as to secure the debt." Taking all this to be so, it does not warrant the legal inference of a want of due diligence, without a finding of the further fact, that it was for the interest of the trust fund that it should in 1863 and 1864, have been collected in Confederate money, or else the defendants should have taken upon themselves the odium of attempting to collect the debt in specie; and the further fact, that the defendants, in the exercise of due diligence, should have foreseen the fact, that at the close of the war, there was to be a military order forbidding the collection of all debts contracted for the purchase of slaves; and of the further fact, under the construction given to the homestead law, it would be held to apply to pre-existing debts, as in Hill v. Kesler,63 N.C. 437, and that such significance would be given to the fact of a levy on land, as in McKethan v. Terry, 64 N.C. 25.3d. "That the defendants, when they made the settlement, 27th September, 1863, accounted for the Baxter debt, and undertook to pay off all of the distributees in Confederate money in full and retain the said note themselves, and actually did pay off, tender, or file away Confederate money, for said distributees to the full amount of the estate, the Baxter note included."
"Whereupon the Court declares that the defendants have not used proper and due diligence in endeavoring to secure and collect the Baxter debt, and are chargeable with the amount of the said debt and interest."
This third fact, as it seems to us, instead of tending to show a want of due diligence, tends to show the contrary, for if the defendants designed to make the Baxter note their own, by settling up the estate in Confederate money and holding back this note for themselves, that relieves them from the implication of a want of diligence in its collection, as it is to be supposed they would use due diligence in collecting a note which they believed had become their own; although it may subject them to the imputation of an attempt fraudulently to convert to their own use a note belonging to the estate.
(46) So his Honor missed the point, and instead of the legal inference of a want of due diligence, he should have considered whether the facts warranted the legal inference of fraud, and then he would have been led to the consideration of the question, can acestui que trust, who seeks to follow the fund, hold the trustee liable *Page 49 
when he has made no profit, and the fund has been lost notwithstanding due diligence on his part to pursue it? If so, a Court of Equity will impose apenalty, for which we find no precedent in the books.
For this finding of his Honor does not warrant the legal inference of a want of due diligence, and the defendants have made no profits.
The decision is reversed, and the case remanded, to the end that the facts may be more fully found, because his Honor seems under a misapprehension of the power of this Court to look into the testimony and supply matters of fact, material to his legal inference; — to have merely found the prominent facts, as he considered them. In the Court below, if the parties be so advised, the right of a trial by jury as to the issue of due diligence may be demanded, so as to present that question to this Court directly for adjudication.
This will be certified.
PER CURIAM. Judgment reversed.