The intestate of the defendants, Sluder and Weaver, was the guardian of the plaintiff, and loaned some of the funds of his ward to one L. F. Sensabaugh, taking a note and security.
This note is dated _________ day of _____________, before the war, and the makers were resident in the county of Haywood. The defendants found the note amongst the papers of their intestate, in January, 1863, and obtained a judgment thereon in the Superior Court of Buncombe (56) County, in November, 1867, and issued an execution in February, 1868. This judgment was regularly docketed in Buncombe Superior Court, and execution issued to Haywood; (judgment not having been docketed in Haywood;) execution continuing till June, 1873, uncollected, with the exception of $100, paid to F. Sluder, one of the administrators, on the 28th April, 1869. The several returns to the execution were, at different times, "Search made and no goods found subject to execution;" "Came to hand too late to advertise and sell real estate;" "plaintiff's receipt on file for $100; remainder suspended by order of plaintiff for the present," which Sluder alleges was done, it being promised to be paid. It is admitted that the maker of the note was solvent for the amount at the date of its execution, and continued to be until the adoption of the present Constitution, when the homestead provision and personal property exemption rendered it impossible to collect it.
If the Court is of the opinion, that the defendants and their intestate, the said guardian of the plaintiff, have not been guilty of neglect in not collecting the Sensabaugh judgment, and that they are entitled to a credit for the amount of the same, then it is agreed that the judgment shall be credited with $372, balance of amount due on said Sensabaugh judgment. *Page 57 
The defendants further claim another credit upon the following grounds, to-wit;
On the 11th May, 1863, the defendant, F. Sluder, met with R. W. Patty, who owed the intestate a guardian note of $ _________, dated before the war, for the loan of money belonging to the estate of the plaintiff, and who offered to pay the same in Confederate money. The defendant declined to receive it. Patty insisted that Confederate currency was a legal tender, and, raising his hand, said: "I intend to have my note; Confederate money is a legal tender," and Sluder, believing he was required by law to accept it, having heard that Judge Saunders had recently charged a jury, that it was an indictable offence to refuse Confederate money, received it of Patty. He mixed (57) this money with other funds belonging to the estate of his intestate, and used it, receiving full credit for the same in his settlement with the Probate Judge. Plaintiff has never received it.
If, upon this state of facts, the Court should be of opinion, that the defendant ought not to be held responsible to plaintiff for the amount of this Patty debt, it is agreed that the judgment herein agreed to, shall be further credited with $155, or its value in good money.
It was agreed, that if neither of the foregoing credits, claimed by defendants, should be allowed by the Court, that judgment should be entered for the plaintiff for the penalty of the bond, to be discharged upon the payment of $1,185.54; and that, if either one or both should be allowed, said judgment was to be credited, as hereinbefore claimed.
His Honor, being of opinion with the plaintiff, refused to allow the set-off of the defendants, and gave his judgment for the full amount, to-wit: $1,155.64, and costs; from which judgment defendants appealed to this Court.
1. The administrators used every means within their reach to collect theSensabaugh debt. They obtained judgment in November, 1867, issued executions 24th of February, 1868, 6th of March, 1869, January 1st, 1870, October 19th, 1870, and June 6th, 1873.
2. Collection by legal process before the adoption of present Constitution, impossible. Webb v. Boyle, 63 N.C. 271; General Order No. 10, Secs. 2 and 3, in note on page 105, 64 N.C.
3. The administrators not liable for failure to collect during the war or because the obligors became insolvent by result of the war. Love v.Logan, 67 N.C. 70; Covington v. Leak, 67 N.C. 363; State v. Robinson,64 N.C. 698.
4. The order of the defendants suspending the execution in (58) their favor in February, 1869, was not imprudently or negligently *Page 58 
made, because at that time the execution debtors were entitled to the constitutional exemptions which, it is admitted, made them insolvent.
5. Nor was it negligence on their part not to have the judgment docketed in Haywood, as the act authorizing transfers and docketing did not go into operation until after the Constitution was adopted, which secured homesteads, etc.
As to the second part of the case — the Patty note:
1. The defendants outside of the peculiar circumstances attending this payment, would be justified in receiving the money at the time he did, 10th of May, 1863, according to the principle laid down in 62 N.C. 234;63 N.C. 315 and 329.
2. But the peculiar circumstances of the case: the protest of defendant, Sluder, and the belief he had that he was compelled to receive the money, clearly justified him. Hawkins v. Dobson, 67 N.C. 203; 64 N.C. 698.
I. The plaintiff insists that defendants are not entitled to credit for the Sensabaugh judgment, for that the administrators undertook the collection of the debt and were bound thereby to the diligence devolving not only upon their intestate as guardian, but also to the diligence that must be exercised by administrators in the administration of estates.
II. That defendant having undertaken and suspended the collection on the 28th of April, 1869, makes them responsible for neglect and takes this case out of the reasoning in the case of Covington v. Leak, 67 N.C. 363.
III. Further, the defendants did not docket the judgment in Haywood, the county in which Sensabaugh lived, and therefore did not exercise the necessary diligence.
IV. One reason assigned in behalf of the guardian in Covington v. Leak, supra, is that "if the guardian had collected the money (59) during the two years before his death, he would have been troubled where to invest it in safety," etc. No such trouble existed in this case, as the ward was ready to receive and would have been bound to receive the money collected when tendered to him.
2. Plaintiff further insists, that defendants should not be allowed credit for the amount of money received from Patty in 1863, because,
I. The defendants were not in fact bound to receive the Confederate money from Patty, though he did insist that it was a legal tender, *Page 59 
and the defendant had heard of the charge of Judge Saunders, as alleged.
II. Even though he were justified in receiving it, it was mixed with other funds of the estate of defendant's intestate, and used in the course of its administration and for the benefit of the estate, the defendants receiving due credit therefor to its full amount, and was not set apart and kept exclusively and distinctly for the plaintiff as the ward of their intestate. Shipp v. Hettrick, 63 N.C. 329, and cases therein noted.
In regard to the Sensabaugh debt, we do not concur in the legal inference of his Honor that the facts set out in the "case agreed" establish a want of due diligence on the part of the administrator.
As is said in Keener v. Finger, post 35, "The defendants, in the exercise of due diligence, were not required to foresee the fact, that under the construction given to the homestead act, it would be held to apply to pre-existing debts, as in Hill v. Kesler, 63 N.C. 437, and that such significance would be given to the fact of a levy on land, as inMcKeethan v. Terry, 64 N.C. 25. We are of opinion that the defendants are entitled to the credit claimed in respect to this debt, according to the case agreed.
In regard to the Patty note, we concur with his Honor. The defendant Sluder at first declined to receive Confederate notes. This shows he was aware it was not prudent to do so, and it was his misfortune to allow himself to be intimidated by what he had (60) heard of the intemperate language of Judge Saunders and to yield to a groundless fear. This distinguishes the case from Harshawv. Dobson, 67 N.C. 203, where the "duress' was direct, immediate and on the spot. Here, it was indirect, remote and not in the face of a Judge unduly excited by his zeal for the Confederate cause, and with the power apparently to carry his threats into execution and order an infirm old man to be "sent to Richmond."
The defendant having received the money, the question is, shall the loss fall upon the trust fund or upon him? The fact that he made use of the money and mixed it with his own settles the question. Shipp v. Hettrick,63 N.C. 329.
The judgment below will be modified according to this opinion, and the costs of this Court will be taxed against the parties equally.
PER CURIAM. Judgment accordingly.
Cited: Love v. Johnston, 72 N.C. 420; S. c. 72 N.C. 436. *Page 60