T. P. COVINGTON and others v. J. C. LATTIMORE, Executor.

*Executors and Administrators—Confederate Money.*

1. The rule laid down in *Patton* v. *Farmer*, 87 N. C., 337, and other cases, in reference to the management of trust-funds during the war, approved.

2. Where an executor, having confederate money of his own, pays his co-
executor a debt due the testator's estate, there being no exigency requir-
ing its collection and no collusion between them, and the amount is on the
same day handed back to him to be held as a part of the assets; *Held*,
that he cannot thereby shift a loss upon the estate, but is responsible for
the debt.

3. While executors cannot sue each other at law, they may proceed in equity
whenever necessary to protect the estate.

( *Cumming* v. *Mebane*, 63 N. C., 315; *Shipp* v. *Hettrick*, *Ib.*, 329; *Drake* v. *Drake*,
82 N. C., 443; *Robertson* v. *Wall*, 85 N. C., 283; *Patton* v. *Farmer*, 87 N. C.,
337, cited and approved).

CIVIL ACTION tried on exceptions to a referee's report, at
Fall Term, 1882, of CLEVELAND Superior Court, before
*Graves, J.*

The plaintiffs appealed from the judgment overruling their
exceptions.

*Messrs. Hoke & Hoke*, for plaintiffs.
*Messrs. R. McBrayer* and *W. J. Montgomery*, for defendant.

SMITH, C. J.    William Covington died early in the year 1861,
leaving a will in which the defendant and one D. P. Gold are
nominated executors, both of whom accepted the trust and pro-
ceeded to administer the testator's personal estate. Gold has
since died, and the present suit, at the instance of the legatees
other than the widow who has assigned her interest to them, is
against the defendant, surviving executor, for an account and
settlement of his administration.

The referee, who, under an interlocutory order, has been
directed to take and state an account, made his report at spring
term, 1882, accompanied with the evidence taken, in which he
finds the defendant indebted upon his administration in the sum
of $635.32, with interest on $516.61, thence until paid.

The plaintiffs filed four, and the defendants seven exceptions
to the report, all of which were overruled by the court, except

that of the defendant numbered two, which was sustained, and from the judgment pursuant to which the plaintiffs appeal. Our revision is then confined to the adverse rulings upon the plaintiffs' exceptions, and allowance of the one exception of the defendant.

The plaintiffs except:

1. For that the referee does not charge the defendant with the amount of his own indebtedness contracted during the testator's life, and evidenced by his single bond.

2. For that the defendant is not held responsible for all the debts due to the testator before the civil war.

3. For that the referee finds as a fact that the defendant kept his collections in confederate currency for the estate, distinct and separate from his own funds, and for which he ought to be held liable.

4. For that he finds that the identical currency thus received and invested in certificates authorized and provided for its retirement in an enactment of the confederate government.

The second exception of the defendant allowed is:

For that he is wrongfully charged with interest on his bond to the testator.

This exception and the first of the plaintiffs' relate to the same subject matter, and are close connected. These will be noticed after disposing of the others.

Second Exception: The testimony shows that the funds were divided between the executors, each taking such as were due from persons residing in his own vicinity and most convenient of access; that the defendant proceeded to collect such claims as he held soon after the administration sale on April 2, 1861, and most of his receipts were during the next year; that the payments were made in confederate money, current and accepted by prudent men in discharge of ante-war and other obligations and in business transactions; that the money, collected and kept apart from that of the executor, could not be loaned or used in the interest of the estate, and was kept and subsequently invested in

52

confederate certificates, which were produced before the referee from the clerk's office, where they had been left as vouchers upon a rendered account, one in the sum of $900, deposited by the deceased executor on March 15th, 1864, the other of $1,500, deposited by the defendant on the 3d day of the same month.

These facts relieve the executors from personal responsibility in the collection and retention of the funds and for the consequent loss, in accordance with repeated adjudications heretofore made in reference to fiduciaries charged with the management of trust-funds. We refer to some of them: *Cumming* v. *Mebane,* 63 N. C., 315; *Shipp* v. *Hettrick, Ib.,* 329; *Drake* v. *Drake,* 82 N. C., 443; *Robertson* v. *Wall,* 85 N. C., 283; *Patton* v. *Farmer,* 87 N. C., 337.

Third Exception : The referee and judge concur in the sufficiency of the proofs that the trust funds were not mixed with those of the executor and were kept separate, and we think their conclusion warranted by them. It will not, therefore, be disturbed

Fourth Exception : The same disposition must be made of this exception, for the testimony is positive and direct that the identical money was put in the certificates, and we cannot disregard it upon inferences of the improbability of the proved fact.

The plaintiffs' first and the defendant's second exception will be considered together.

The plaintiffs' complaint, that the defendant is not, and ought to be, charged with the amount of his own debt, so far as it refers to the principal money, is founded upon a misconception of the facts. The referee reports two accounts, one of the joint administration conducted by both executors, the other of his personal relations to the contested charge. In the former is a single charge of $3,455.91, the value of the personal estate that went into the hands of the executors, as shown by Exhibit "B" (excluding, we suppose, the testator's slaves), embracing in this aggregate the debt due by the defendant to his testator. The vouchers allowed for disbursements and charges admitted by the referee, absorb this value with an addition of two years interest on $3,015.26,

actually collected, and show an excess of $185, overpaid by the executors. Among the executors' credits is not found the debt due from the defendant, and he is consequently charged therewith. The referee, however, does charge the defendant with the interest since accrued, which was not and could not be in the general account, without any diminution on account of the excess found due to the executors. The defendant's exception raises the question whether he is responsible for the interest, which has not been discharged, as for the principal which has been so discharged by the expenditures, arising since to May 8, 1882, to which time the computations of the referee are made, and after that date.

The referee has allowed interest in favor of the testator's estate on the amount of actual collections in money by the executors for two years, though not on the full value of the personal estate, while no interest is computed and admitted upon the series of disbursements that extinguish the entire charge.

We do not concur in the ruling of the court, but sustain the conclusion of the referee that the defendant is accountable for the interest on his debt, and that the method pursued for his exoneration cannot have that effect. The defendant, having confederate money of his own, paid to his co-executor the amount of his debt, and it was accepted by the latter as a discharge, the fund being on the same day handed to the defendant to be held as part of the trust estate. The referee finds that, in this transaction, there was no collusion between the executors, and that the money was paid by one and received by the other in entire good faith, as if the payment had been made by any other debtor. But at the same time, it appears that the debt, if suffered to remain, was solvent and secure; that no exigencies in the administration required the collection ; that such funds could not then be loaned or profitably invested, and this was well known to the defendant ; and that the testator's directions were to keep his money at interest, and these the executors, in becoming such, undertook to carry out.

The result of this concurrent action is to shift a loss which would have fallen upon the defendant to the estate entrusted to his management: in other words, he escapes, but the estate suffers. Such a transaction cannot be sustained in a court of equity, for while a trustee is not required to take better care of the trust fund than of his own, he must take the same care of it, and at least cannot seek his own personal advantage at its expense and detriment. Such would be the result if the transaction were to be sustained, and we must hold the debt unpaid and the loss, in the money returned to the defendant, his own.

If the defendant had been in failing circumstances or the money paid of intrinsic and permanent value, instead of a fluctuating and declining currency, the reception of payment would have been upheld. Indeed, if the debt was endangered, the deceased executor would not only have been justified in making the best collection and settlement in his power, but he might have been held individually liable for not making the effort to collect or to secure; for in such case, the adversary relations of the indebted executor towards the estate would impose upon the other the obligation of trying to save this, as any other debt due from a stranger.

This was so ruled by Lord Chancellor COTTENHAM in a case where property belonging to the testator in the hands of one of the executors had been lost by his bankruptcy, and the bill was filed to charge the other executor with its value because of his negligence in not taking steps to secure it. After referring to the general duty of executors "to call in and collect such parts of the estate as are not in a proper state of investment," and in answer to his own inquiry, "is it not a part of his duty, because the property is in the hands of a co-executor, and not of any stranger?" he says, "it is impossible to find any principle for any such distinction." Reciting certain cases, he proceeds to say: "These cases establish that it is the duty of all executors to watch over, and if necessary, to correct the conduct of each

other; and the moment that principle is established, all ground of distinction between the two classes of cases ceases."

While executors may not sue each other at law, they may in equity, when necessary for the protection of the trust estate, as in case the mortgagor becomes one of the executors of the mortgagee, the co-executor may file a bill for a sale of the mortgaged property. 2 Williams on Executors, 1178; *Lucas* v. *Scate*, 2 Atk., 56.

But we think the excess of $185, due the defendant surviving executor, should be discharged out of the accruing interest, and the residue only recovered against him. This will reduce the interest to which the plaintiffs are entitled to $451.62, which, with interest on $576.61, principal money, from May 8, 1882, the plaintiffs may have judgment for according to their respective shares therein under the will. The plaintiffs will also have judgment for the costs of their appeal.

Error.                                                    Reversed.